## STATE OF MARYLAND vs. A. LINGAN JARRETT and SPRIGG HARWOOD.

In an information on behalf of the State, asking an injunction to restrain a party from exercising the duties of the office of comptroller, the gravamen alleged was imminent hazard to the fiscal affairs of the State. This averment was distinctly and positively denied by the answer, and the whole equity being thus sworn away, it was HELD, that the injunction was properly refused.

This court is bound to take notice of the public statute laws of the State, and if it appears by such statute laws that some of the allegations of a bill are not simply as therein stated, it is the duty of this court to interpret them so as to make them read as if set out in connection with what appears in the public statutes.

Where the subject of a bill is the title to a public office, which depends upon the Constitution and laws of the State, any silence on the part of the pleader in regard to such laws, cannot be allowed to the prejudice of a party whose rights are ascertained by them.

The Constitution provides that the Legislature shall make provision for all cases of contested elections of any of the officers not therein provided for, and under this provision a law was passed that *"all* contested elections for comptroller *shall* be decided by the House of Delegates." HELD:

1st. That the decision of the House of Delegates on such a contest, must be taken as final and conclusive, no matter what may have been the reasons which induced such decision.

2nd. That the power thus given the House of Delegates is not a special or limited jurisdiction, nor are its decisions liable to the reasoning applicable to judgments of such tribunals; its jurisdiction is the *only entire* and *absolute* one in such cases, and there is no other tribunal which can review it.

In case of a contested election for the office of comptroller, if the party decided by the House of Delegates to be elected, fails to qualify, by giving bond and taking the necessary oath of office, the party holding under the *previous election* continues in office until the due qualification of his successor.

In case of the resignation of the party so holding over, the governor has the constitutional power to appoint his successor, not, however, necessarily for the full period between the appointment and the next general election, but until the party declared to be entitled to the office shall duly qualify.

In construing a Constitution, it must be taken as a whole, and every part of it, as far as possible, interpreted in reference to the general and prevailing principle.

State of Maryland *vs.* Jarrett & Harwood.

In reference to the office of comptroller, it was manifestly the purpose of the framers of the Constitution to give to the *people* the right to select that officer, and if a vacancy occurred, to give the governor power to fill it.

In case of a contested election to that office, the party decided by the House of Delegates to be elected, is placed in the same position as if he had been returned elected by the judges of election, and if, by any defect in the then law, or on the part of his administrators, he is prevented from qualifying, it is competent for the Legislature to pass an enabling Act for that purpose.

Where the party declared elected qualifies after the resignation of the party holding over, and after an appointment by the governor, the appointment of the governor, in such case, is *ad interim* only, and the appointee is subject to be divested whenever the party declared elected duly qualifies.

The official bond of a party declared to be elected comptroller, was presented to the governor for approval, and was not accepted or approved by him. Afterwards the same bond was presented to, and accepted and approved by, another officer, authorized by law to accept and approve it. HELD:

That this made the bond valid and binding upon the sureties; it was not *delivered* till approved by the proper officer; a statutory bond is not *delivered* or binding on the obligors till it is *approved*.

An injunction is not a matter *ex debito justitiœ*, but rests for the most part in the conscience of the court, and there is no case authorizing an injunction against one having the legal right, and but few where the right is doubtful, except in cases to stay waste, or prevent the destruction of the thing.

APPEAL from the Equity Side of the Circuit Court for Harford county.

*Informing*, Thomas S. Alexander, solicitor for the State of Maryland, on this behalf appointed by the governor of Maryland, shows that Dennis Claude, of the city of Annapolis, is comptroller of the State of Maryland, having been duly appointed and commissioned by the governor, to supply a vacancy in said office, occasioned by the resignation of William H. Purnell, late comptroller, and that said Claude has bonded and taken the oaths of office prescribed by law, as by the certificate of appointment filed with this information will more certainly appear, and that from the appointment and qualification of said Claude as comptroller as aforesaid, that is to

say, from the 8th day of May 1861, to the present time, the said Claude has been and now is in possession of the said office, actually occupying the chambers in the record office building, which were appropriated to the use of the comptroller, and which have ever since the completion of said building been so used, and possessing and using all the books of accounts and other documents and muniments appertaining to said office, including the seal or stamp belonging thereto, and during all the said term has been exercising the powers and duties belonging to said office until his disturbance therein, as hereinafter stated.

And further informing, the said solicitor shows that the said Claude, as comptroller as aforesaid, is entrusted with the general superintendence of the fiscal affairs of the State; with the superintendence and enforcement of the collection of all taxes and revenues; with the adjustment of all public accounts; with the granting of all warrants for payment of moneys out of the treasury; and with the countersigning of all evidences of State debt, without which, it is declared by the Constitution of this State, that such evidences shall not be valid. And that it is requisite to the proper transaction of the fiscal affairs of the State, and essential to the maintenance of the public credit, that the said Claude should be protected in the exercise of the functions appropriate to his said office, until his term of office shall have determined by law, and until his successor, duly appointed and qualified in that behalf, shall have been inducted into said office, and entered upon the discharge of the duties thereof.

But now the said solicitor further informs and shows, that on the 23rd of July, in the year aforesaid, Sprigg Harwood, treasurer of the State, addressed to the said Claude a letter, of which a copy is herewith exhibited, and the said Claude also received from the president of the Farmers Bank of Maryland, in which bank the moneys of the State are deposited, a letter, of which a copy is also filed herewith, and that on the 29th of July, in the year aforesaid, the said Harwood, treasurer as aforesaid, refused to pay a warrant drawn by the said Claude as comptroller, on the said treasurer, in favor of one

Thomas J. Wilson, for the sum of $143, money justly due and owing from the State to the said Wilson, the said Harwood alleging as excuse for the non-payment of said money, that he did not recognize the authority of said Claude as comptroller, to issue warrants on the treasury, and that one A. Lingan Jarrett, of Harford county, is the true and lawful comptroller of the State, as by the deposition of said Wilson, herewith filed, will appear, and it is prayed by said informant that said exhibits, and all others which may be filed herewith, may be taken as parts of this information; so that it is apparent that the said Jarrett pretends to be the comptroller of the State, and claims to exercise all the powers and authorities incident to said office, and that the said Harwood, as treasurer as aforesaid, aids and abets him in the said pretences; and that the said Harwood will disburse the moneys of the State, and will receive moneys into the treasury, on the warrants of the said Jarrett, as comptroller, and that he will not recognize the validity of any warrant which may be issued by the said Claude, as comptroller, either for payment of moneys into or out of the treasury; and thereby the fiscal interests of the State are placed in imminent hazard, since it will be impossible for any one advisedly to adjust the account of any debtor to the State, or ascertain who is creditor of the State, or to exercise the duties of comptroller, in reference to the countersigning of evidences of debt of the State, without the aid of the books of accounts and other written muniments appertaining to the office of comptroller, which are in the actual possession of the said Claude as comptroller, and which came into his possession by virtue of his appointment and qualification as comptroller as aforesaid.

And the said informant further suggests and insists, that even if the said Jarrett was, of right, the comptroller of the State, (which is denied,) he ought not to be permitted to exercise the functions of said office, nor to disturb the said Claude in the exercise thereof, until the said Jarrett shall have obtained actual possession of said office, and of the books of account, and other muniments thereof, and shall be in a condition to exercise the duties thereof advisedly, and with due

regard to the safety of the interests of the State; and that so long as the said Claude is permitted to remain in the actual possession and enjoyment of the said office, with its books of accounts and other muniments thereof, the said Harwood, as treasurer, ought not to be permitted to repudiate the authority of the said Claude as comptroller as aforesaid. And the said informant further informs, that the said Wilson has filed his petition on the law side of the circuit court for Anne Arundel county, praying for a writ of *mandamus* to the said Harwood, as treasurer, to compel him to pay to said Wilson the sum of money therein mentioned, and that thereupon a rule has been passed, requiring the said Harwood to show cause wherefore a writ of *mandamus* ought not to issue as prayed, as by a copy of said petition and rule, herewith filed, will appear; and the said informant further suggests, that on said proceeding issue will be joined on the conflicting titles of said Claude and Jarrett, and that until the said question of title shall have been adjudged in said proceeding, or in some other proceeding to be instituted by the said Jarrett against the said Claude, the exercise by the said Claude of the rights and functions of said office of comptroller ought to be recognised by the said Harwood as valid acts, and done by rightful authority.

To the end, therefore, that the said Harwood and Jarrett may answer the premises, and that the said Jarrett may be restrained and enjoined from exercising any of the powers attached or incident to the office of comptroller, until his title to said office shall have been adjudged valid, and he shall have been inducted into the possession of said office by due process of law, and that until the said Jarrett shall have been adjudged to be comptroller, and inducted into said office as aforesaid, the said Harwood, as treasurer, shall be restrained and enjoined from obeying the warrants or recognizing other acts done by the said Jarrett under color of his pretended title to said office, and from refusing obedience to the warrants of said Claude as comptroller, as aforesaid, and that the State may be further relieved as equity and right may require:

It is prayed that a writ of injunction may be issued to the said Jarrett and Harwood, strictly enjoining and restraining

the said Jarrett from exercising any of the powers and duties attached or incident to the office of comptroller, until the further order of this court, and also enjoining and restraining the said Harwood from recognizing as valid or obeying any warrants or other acts done by the said Jarrett under color of title to the said office, and from refusing to obey the warrants issued and other acts done by the said Claude as comptroller, as aforesaid, until the further order of this court, and also the writ of *subpœna* to the said Jarrett and Harwood, commanding them to be and appear in this court to answer the premises, and obey such decree as may be passed thereon.

This information was filed in the court below on the 14th of August 1861, and an order was passed that the prayer for the injunction stand for hearing on a day fixed, provided a copy of the information and order be served on the defendants, and before the time limited the defendants appeared and filed their answers.

Jarrett, in his answer, says, that it is not true and he positively denies that the said Claude is comptroller, and he also denies that at the time when said informer pretends said Claude was appointed to said office by the governor, there was any vacancy in said office; on the contrary, this respondent avers, that he is the comptroller of the State of Maryland, duly elected and qualified, and in possession of said office, and in the legitimate and full exercise of the duties thereof. That at the general election, held on the 2nd of November 1859, respondent was duly elected comptroller, and accepted said office, but the judges of election for the city of Baltimore, made false and fraudulent return, by which it falsely appeared that William H. Purnell was elected instead of respondent. That this respondent thereupon protested to the governor against his issuing a commission to said Purnell, and gave notice to said Purnell that as soon as the Legislature convened he would contest his election as comptroller, on the ground that the election in the city of Baltimore, and the return thereof, was fraudulent and void; and that at the session of the Legislature, next after said elec-

tion, he contested the same and brought his claim to said office before the House of Delegates, which was the only tribunal authorised by the laws of Maryland to adjudicate and settle controversies of that kind, and the said House of Delegates, after a hearing of this respondent and said Purnell, and a full investigation of all the facts, determined and declared and adjudged, that this respondent, at the said election, was duly elected comptroller of the State, for a term of years which has not yet expired, as will appear by resolution No. 6 of said House of Delegates, passed on the 10th of March 1860, a copy of which is herewith filed as part of this answer; that respondent thereupon claimed said office, and is advised that by the judgment of said House of Delegates, he then and there became entitled to the same. That respondent thereupon went before the governor, as soon as he conveniently could, and tendered to him a bond, executed by respondent, with ample security, in the form and penalty prescribed by law, for the faithful performance of the duties of said office, and offered to take the oath of office prescribed by the Constitution and laws of the State; that the governor then and there approved of the security in said bond as entirely sufficient, but for some reason unknown to respondent, refused to accept the same or administer to respondent the oath of office, and respondent thereupon, before and in the presence of the governor, took and subscribed the oath of office prescribed by the Constitution and laws, which was duly administered to him by a justice of the peace, duly commissioned and qualified, as will appear by certified copies of said bond and oath herewith filed.

But this respondent avers, that because the governor refused to accept said bond and administer the oath, he was unable, at that time, to obtain possession and exercise the duties of said office, although, as he avers, he then and ever since has claimed to be the comptroller, and has used due diligence to assert his right and perform the duties of the office. And respondent further says that afterwards, on the 12th of June 1861, the Legislature passed a law authorising any judge of the Court of Appeals to administer to him the

oath of office and approve his bond as comptroller, and in pursuance of this Act, respondent, on the 9th of July 1861, took and subscribed before the Hon. James L. Bartol, one of the judges of the Court of Appeals, the oath of office prescribed by the Constitution and laws of this State, and said judge at the same time took and approved respondent's bond as comptroller, as will appear by a certified copy thereof, herewith filed as part of his answer, and he also herewith files, as part of his answer, a certified copy of the oath taken by him, as aforesaid, both of which were duly recorded.

And respondent avers that immediately or very soon after he had given bond and taken the oath of office, as last aforesaid, he entered upon the performance of the duties of his said office, and has ever since continued in the same, and was duly recognized by the treasurer and by the Legislature of the State, and was, in fact, and still is, the only legal comptroller of the State, and that neither the said Claude nor any other person, has power or authority to issue any warrant or perform any other act or duty as comptroller. And he positively denies that his performance of the duties of said office has occasioned or will occasion, any loss, injury or hazard to the State of Maryland or to her interests.

Further answering, respondent denies that said Claude has possession of the said office of comptroller, or has had, since this respondent took the oath of office as aforesaid, or has possession of the muniments of title. That it is true said Claude has possession of the room which was used for the accommodation of the comptroller, and of books and papers belonging to the office, but this respondent has opened a new set of books, and has procured a stamp, and has access to the accounts, (of which there are duplicates,) and has ample accommodation for the performance of his duties in the old comptroller's office in the State House, and if any detriment should by possibility occur, by reason of said Claude's wrongful detention of said books and papers, this respondent denies that he is in any manner responsible.

Further answering, this respondent says, that he has understood that said Claude, pretending to act as comptroller,

has drawn a warrant on said Harwood as treasurer, for the payment of a sum of money as stated in said information, but he has no personal knowledge of the fact; and he has been informed that said Wilson filed his petition for a writ of *mandamus*, as stated, which case is still pending. And this respondent is advised that said Claude's pretended claim to said office, which is now held by this respondent, is a case proper to be tried in a court of law, where there is a full, complete and speedy remedy for all the pretended grievances set forth in said information. And he denies that this court has any jurisdiction to try said Claude's right to said office, or to restrain either this respondent or said Harwood in the performance of the duties pertaining to their respective offices, or to compel them to recognize the pretended claim of said Claude whereby would ensue great confusion and interruption in the public business, and loss and injury to the State. And having thus answered said information as fully as he is advised it is material, he prays that the same may be dismissed, and that the injunction prayed for may be refused, and if it should be granted that the same may be dissolved.

Harwood, in his answer, says, that but for the respect which is due by him to this court, he would not have deemed it necessary for him to take any notice of said information, for the reason, apparent to the court, that individually and officially he has no interest in the controversy whether Claude or Jarrett is legally comptroller, inaugurated by this proceeding. In the earliest stages of the controversy in relation to this matter between Jarrett and Purnell, this respondent declined to take any step by which the rights of one would be preferred over the other, and left the parties to have their respective rights legally decided, being advised that it was his duty, *ad interim*, to recognize the authority of Purnell.

But this respondent further states that since the Act of the 25th of June 1861, entitled, "An Act to enable A. Lingan Jarrett, comptroller of Maryland, to enter into bond and qualify," and the Act of August 1861, herewith filed as part of his answer, he has been advised that it is his duty to obey the plain action of the Legislature in reference to this subject,

and he has, in accordance with said action of the Legislature, recognized the claims of Jarrett to said office. In fact this respondent has no interest in the matter in controversy, in so far as it is confined to the question, whether one or the other of these gentlemen is legally entitled to exercise the functions of said office; but he has a deep interest in the question raised by that part of the information which asks an injunction restraining this respondent from refusing to obey the warrants issued, and other acts done by the said Claude as comptroller, inasmuch as he would not feel himself at liberty to obey any order which might gratify the prayer of the informant in that particular.

Further, this respondent is advised and avers that said Claude is not legally the comptroller, and has not been elected or appointed comptroller in accordance with the Constitution or laws of Maryland, and that Jarrett is the comptroller; that he was elected comptroller at the general election held on the 2nd of November 1859, and has given bond and has qualified in accordance with the Constitution and laws of the State, and is now in the actual discharge of the duties of said office. This respondent further shows that a petition for a *mandamus* has been filed in the circuit court for Anne Arundel county, in the name of Thomas J. Wilson, to compel respondent, as treasurer, to pay a warrant in favor of said Wilson, drawn by said Claude, as comptroller, and thereby to recognize the title of said Claude as comptroller, which petition, with the answer of respondent thereto, and the exhibits, are herewith filed, and he prays that they may be taken as parts of this, his answer. Wherefore this respondent submits to the court that the prayer of the informant ought not to be granted, and if the injunction should be granted, he prays that the same may be dissolved.

The purport of most of the exhibits filed with this information and the answers, are sufficiently stated therein. The Resolution No. 6, of the House of Delegates, passed on the 10th of March 1860, is as follows:

"*Resolution* declaring the election held in the city of Baltimore, on the 2nd of November last, void, and declaring A. Lingan Jarrett elected comptroller of the State.

State of Maryland *vs.* Jarrett and Harwood.

"*Resolved by the House of Delegates of Maryland,* That it appears to this House that there was such tumult, riot, intimidation, fraud and injustice at the election held in the city of Baltimore on the 2nd of November last, in contempt of law, and in violation of the freedom of elections, that the said election, so far as said city is concerned, is void, and that A. Lingan Jarrett, having received a majority of two thousand four hundred and ninety-two of the legal votes cast in the State of Maryland, on the said 2nd of November, for the office of comptroller of the treasury of the State of Maryland, be and he is hereby declared elected to said office."

The Act passed at the extra session of the Legislature, on the 21st of June 1861, in reference to the qualification of Jarrett, is as follows:

"An Act to enable A. Lingan Jarrett, comptroller of Maryland, to enter into bond and qualify.

"Whereas the said A. Lingan Jarrett was duly elected comptroller, as ascertained and decided by the House of Delegates, on the tenth day of March, in the year eighteen hundred and sixty, and the governor of the State has refused to recognize said election, and to receive the bond of said A. Lingan Jarrett, as such comptroller, and to administer to him the oath of office: Therefore,

"*Section* 1. *Be it enacted by the General Assembly of Maryland,* That any one of the judges of the Court of Appeals be and he is hereby authorized to take and approve the bond of the said Jarrett, and to receive the declaration and administer the oath required by the Constitution and laws, and that said Jarrett be authorized to make the declarations and take the oaths before any one of said judges, and the said bond, when so taken and approved, and the declarations and oaths so made, shall be recorded in the office of the clerk of the Court of Appeals, and have the same effect as if done in the manner and mode now prescribed by law.

"*Section* 2. *Be it enacted,* That this Act shall take effect from the date of its passage."

The *bond* of Jarrett, which was taken and approved on the 9th of July 1861, by James L. Bartol, one of the judges of

the Court of Appeals, and ordered by him to be recorded, is dated the 14th of March 1860, and is the *same bond* which had been previously presented by Jarrett to the governor for his approval, and on which the following endorsements appear, the last of them being written in pencil:

"Comptroller. A. L. Jarrett *vs.* W. H. Purnell. Contest. Papers marked exhibits A. & B.—Resolution and bond, filed March 16th, 1860."

"*March 28th*, 1860. Having thoroughly investigated this case, I decline to receive and approve bond, and this day return same to A. L. Jarrett, Esqr." (Signed,) "*Thos. H. Hicks.*"

"This bond is, so far as the responsibility of parties thereto subscribing, entirely sufficient in my opinion" (Signed,) "*T. H. H.*"

The Act of the extra sessison, passed on the 5th of August 1861, and referred to in, and filed, as an exhibit, with the answer of Harwood, enacts: "That A. L. Jarrett, the comptroller of this State, draw his warrant upon the treasurer of this State, and that the treasurer draw his check upon the said warrant in favor" of a certain named party, for a certain sum therein specified.

The court, (PRICE, J.,) upon information, answers, and exhibits, refused the injunction prayed for, and from this order of refusal the informant appealed.

The cause was argued before LE GRAND, C. J., TUCK, BARTOL and GOLDSBOROUGH, J.

*Note.*—The points, only, of the arguments, as presented in the briefs on either side, are given. The several positions taken were argued at length, and with great ability, by the respective counsel.

*Thos. S. Alexander*, for the appellant argued:

*First.* That the danger of loss to which the treasury will be exposed by the exercise of the functions of comptroller by two distinct and opposing persons, embarrassing the collection of the public revenues, complicating the public accounts,

and exposing the public credit to hazard, entitles the State, upon the general principles of equity, to an injunction to stay that competition until the title to the office can be determined at law. The Constitution, Art. 6, sec. 1, prescribes the duties of the comptroller. He is clothed with the general superintendence of the fiscal affairs of the State, with the duty of superintending and enforcing the collection of all taxes and revenues, of granting all warrants for payment of money out of the treasury, and of countersigning all evidences of State debt. The treasury belonging to the State, and the comptroller and treasurer being agents of the State, the court may interpose on the principle on which it protects a private trust from waste and dilapidation by the trustee. 2 *Story's Eq.*, secs. 905, 906, 907.

*Second.* As the equity cannot determine the question of title, it will respect the possession of Claude as comptroller, *de facto*, and will compel Jarrett to establish his title by suing out a *mandamus*, or abide by the litigation now pending at the suit of Wilson. That Jarrett is not in possession of the office. 1 *Term Rep.*, 399, *note*, *Powel vs. Milbank.* 5 *Md. Rep.*, 423, *Marshall vs. Harwood.* That Claude as comptroller, *de jure* or *de facto*, may exercise all the functions of the office. In every contingency, therefore, the acts of Claude will be valid as well for as against the State, whereas the acts of Jarrett, pretending to be comptroller, *de jure*, must depend for their validity upon the validity of his title to that office. And overlooking all minor objections, it may be sufficient to say, that the public credit must be imperiled by his acting as comptroller, since, by the Constitution, no certificate of State indebtedness is of any value unless countersigned by the comptroller *de jure* or *de facto*.

*Third.* It is denied that the question of title is in issue in this case, or if in issue that it can be examined at this stage of the cause. But should it be determined otherwise, then the State objects that Jarrett has not shown a title to the office, and relies on the following reasons:

1st. It is conceded that, by the election returns, it is shown that Purnell was elected by a vast majority of the votes cast,

41    v. 17

and that Jarrett claims under a resolution of the House of Delegates, avowedly by disfranchising one third of the voters of Maryland, and awarding the return to the candidate who, in fact, received a small minority of the votes cast. Conceding then, for the purpose of this point, that the House of Delegates has jurisdiction to determine a question of contested election, and that the proceeding in this case was regularly conducted and adjudicated, it is maintained that it is a case of false judgment. *Cons., Art.* 6, *sec.* 1. *Resolution No.* 6, *of House of Delegates of* 1860.

2nd. That the House of Delegates has not the constitutional right to determine a case of contested election. *Declaration of Rights, Art.* 6. *Cons., Art.* 3, *sec.* 48. *Act of* 1853, *ch.* 244.

3rd. That the resolution of the House of Delegates is not, *per se*, admissible as evidence of what was done in the premises, and that if the entire record is examined into it will be apparent that the whole proceeding was irregularly conducted, and in utter disregard of the plainest rules of law and dictates of justice.

4th. That it is to be assumed that Jarrett had notice of the resolution of the House of Delegates on the day of the passing thereof, and if that resolution is assumed to establish his right he ought to have given bond and taken the oaths, and made the declaration required by law, within thirty days from the time of the passage thereof, whereas it is not pretended that he did so within that time. *Act of* 1852, *ch.* 172, *sec.* 5. 20 *Johns.*, 184, *Jackson vs. Bodle*.

5th. That he did not, at any time, take said oaths, or make said declarations before the governor, as required by law. As to oaths of office, see *Acts of* 1852, *ch.* 12, and *ch.* 172, *sec.* 3. 9 *East.*, 246, *King vs. Courtenay*, and *note, Rex vs. Ellis*. As to bond, see *Act of* 1852, *ch.* 12, *secs.* 2, 5, 6, 8.

6th. That he did not, at any time, give bond approved by the governor, as required by law.

7th. That the Act of the General Assembly of June 1861, was simply inoperative as against the title of Claude, acquired prior to that date. *Cons., Art.* 6, *sec.* 1.

8th. That Jarrett has not, at any time, given a valid bond as required by said Act of Assembly: the paper approved by the judge, having been sealed and delivered on the 16th of March 1860, to be approved by the governor, having been rejected by the governor, and having been, without any further delivery thereof, presented to and approved by the said judge. 3 *Co.*, 26, *b.*, *Butler & Baker's case.* 5 *Co.*, 119, *b.*, *Whelpdale's case.* 20 *Barb.*, 332, *Stephens vs. Buffalo Co.* 20 *Johns.*, 184, *Jackson vs. Bodle.* 24 *Wend.*, 280, *Crosby vs. Hillyer.* 12 *Johns.*, 418, *Jackson vs. Phipps.* 2 *Sneed*, 164, *Brevard vs. Neely.*

*Henry W. Archer, Wm. Harwood* and *Thos. G. Pratt,* for the appellees, argued:

1st. That all the equities relied on in the information are denied in the answers. Both the title and possession of Claude are denied, and also the allegation of danger or possible injury, upon which could be founded any pretext for interference by injunction.

2nd. That Jarrett is entitled to the office by decision of the only tribunal competent to decide the right, of which the court must take notice. He is also in possession, and the very ground of complaint against him is, that he is exercising the duties of the office to which, by the decision of the House of Delegates, he is entitled. *Resolution No.* 6, *of* 1860. *Cons., Art.* 3, *sec.* 48. *Code, Art.* 35, *sec.* 52, *page* 268. *Code, Art.* 22, *sec.* 7, *page,* 122. *Act of 5th August* 1861, *ch.* 89. 2 *Story's Eq., sec.* 1548. He has also given bond and duly qualified. *Cons., Art.* 6, *sec.* 1. *Code, Art.* 68, *sec.* 2, *page* 470, and *sec.* 10, *page* 471. *Act of 21st June* 1861. *Code, Art.* 22, *sec.* 1, *page* 121. 4 *Md. Rep.,* 189, *Thomas vs. Owens. Act of 5th August* 1861, *ch.* 89.

3rd. That there is no sufficient case made out for the interference of the court by injunction. The allegations of danger to the interests of the State are not only denied, but are manifestly frivolous.

4th. That the court of chancery has no power to grant the injunction. If all the allegations of the information were

true, and Claude was entitled to the office, there was a complete remedy at law, and a court of equity has no jurisdiction. 4 *Md. Rep.*, 26, *Clayton, et al., vs. Carey et al.* 9 *Md. Rep.*, 83, *Harwood vs. Marshall.* 2 *Johns. Ch. Rep.*, 371, *Atty. General vs. Utica Ins. Co.* 1 *Hopkin's Ch. Rep.*, 125, *Deklyn vs. Davis.*

5th. That there was no vacancy in the office at the time of the appointment of Claude, and even if there was, the governor had no power to fill the vacancy without the advice and consent of the Senate. *Cons., Art.* 6, *sec.* 1, and *Art.* 2, *secs.* 11, 12, 14.

LE GRAND, C. J., delivered the opinion of this court.

This is an appeal from an order of the circuit court for Harford county, refusing an injunction as prayed for in an information filed by Thomas S. Alexander, solicitor for the State of Maryland, appointed by the governor of Maryland. The information, after detailing certain facts in connection with the office of comptroller, sets forth that Dennis Claude was, on the 8th day of May 1861, appointed by the governor comptroller, to fill a vacancy occasioned by the resignation of William H. Purnell, who, up to that time, held the office of comptroller; and that since the said 8th day of May, said Claude has been, and now is, in possession of the said office of comptroller, actually occupying the chambers in the record office building, which were appropriated to the use of the comptroller, and possessing and using all the books of accounts and other documents and muniments appertaining to said office, including the stamp or seal belonging thereto, and that during all the said term has been exercising the powers and duties belonging to the said office, until disturbed therein by A. Lingan Jarrett and Sprigg Harwood, the first claiming to be the comptroller, and the other the treasurer of the State, refusing to pay a warrant drawn by said Claude as comptroller, in favor of one Thomas J. Wilson. The information then proceeds to show that the said Harwood is aiding and abetting the said Jarrett in his pretensions, and has declared that he will disburse the moneys of the State on the warrants

State of Maryland *vs*. Jarrett & Harwood.

of the said Jarrett, as comptroller, and will receive moneys into the treasury on the warrants of the said Jarrett, and that he will not recognize the validity of any warrant which may be issued by the said Claude, as comptroller, and as a consequence of such conduct, "the fiscal interests of the State are placed in imminent hazard, since it will be impossible for any one advisedly to adjust the account of any debtor to the State, or to ascertain who is creditor of the State," &c. An injunction is asked shall be issued to the said Jarrett and Harwood, strictly enjoining and restraining Jarrett from exercising any of the powers and duties attached or incident to the office of comptroller, until the further order of this court, and also enjoining Harwood from recognizing as valid or obeying any warrants issued or other acts done by the said Jarrett, under color of title to the said office of comptroller, and from refusing to obey the warrants issued and other acts done by the said Claude, as comptroller.

The substantial gravamen of the bill is, that the fiscal interests of the State are in imminent hazard, and, on that ground, the interposition of a court of equity is invoked, in the manner prayed for in the bill.

This averment is *distinctly* and *positively* denied by the answer of Jarrett, and as there is no other ground on which it is pretended a court of equity would be justified in interposing by injunction, the whole equity of the bill is sworn away by the answer, and therefore—conceding for the sake of the case, but without deciding it, that a court of equity in this State has jurisdiction in a case like the present—the unanimous opinion of this court is, that the order of the circuit court, refusing the injunction, should be affirmed.

In addition to what we have said, it may be proper to add, that in any aspect of the case made by the bill, or any other which might be filed at the instance and on behalf of the same complainant, this court would be compelled to take notice of the public statute law of the State, and if that law advertises the court, some of the allegations of the bill are not simply as they are therein stated, then it is its duty to interpret them so as to make them read as if set out in connec-

tion with what appears in the public statutes; and this being so, the court are notified that the holding of the office of comptroller by Mr. Purnell, was not a holding by him with out contest by another claimant of it, or by a general acqui escence in his title to it.

It may be very properly conceded, that if Mr. Purnell were rightfully in office till the 8th day of May 1861, without any other person having a right to divest him of said office, upon qualifying according to law, that his resignation on that day created such a vacancy as, under the Constitution, the governor had the right to fill by appointment, which appoint ment would continue until the next election, and the qualifi cation of the party elected, and this, we take it, was the case which the framer of the information designed to present to the court; but if it be (as it clearly is) the duty of the court to notice the public laws, any silence on the part of the pleader in regard to them cannot be allowed, to the prejudice of a party whose rights are ascertained by them. In other words, the bill must be read in connection with the subject to which it relates, and the subject in the present instance is, a title to a public office which depends upon the Constitution and laws of the State. By the latter, it is made known to the judiciary that A. Lingan Jarrett and Wm. H. Purnell severally claimed the office of comptroller under the election of 1859, and also that their several claims were considered by the House of Delegates, and by it passed on and determined, and also that the Legislature authorized and appointed a mode in and by which A. Lingan Jarrett should bond and qualify as comptroller. These are facts which this court cannot ignore; and in entertaining the case, the question is, what effect have those facts on the case made by the bill and its accompanying exhibits?

By Resolution No. 6, passed the 10th day of March 1860, it was declared, "that A. Lingan Jarrett, having received a majority of two thousand four hundred and ninety-two of the legal votes cast in the State of Maryland, on the said second of November, for the office of comptroller of the treasury of

the State of Maryland, he is hereby declared elected to said office."

This is clear and explicit, and covers the case, if the House of Delegates had the right to pass it. Had it such right? By the 48th section of Article 3rd of the Constitution, it is provided that "the Legislature shall make provision for all cases of contested elections of any of the officers not herein provided for." It is nowhere else in the Constitution pointed out how any contested election for comptroller shall be disposed of; and it follows that the provision is to be made by the Legislature. Such provision was made by Act of 1853, ch. 244, and by the 52nd section of Article 35 of the Code of Public General Laws: that "*All* contested elections for comptroller and commissioner of the land office, *shall* be decided by the House of Delegates."

It cannot, we think, be considered an open question at this day, that where the exclusive and sole right to decide upon a question has been confided to any tribunal, and no appeal allowed from its decision in the premises, that such decision must be taken as final and conclusive, no matter what may have been the reasons which induced such decision.

The power given to the House of Delegates, under the Constitution and law, is not a special or limited jurisdiction, as urged at the bar, nor liable to the reasoning applicable to the judgments of such tribunals; its jurisdiction is the *only*, *entire* and absolute one in cases of contested election for the office of comptroller. There is no other tribunal which can review it.

The Resolution of the House of Delegates decided the election of A. Lingan Jarrett to the office; but, of itself, did not, nor could it, place him in it; it only placed him in a condition, if he chose to do so, to qualify himself to enter upon its duties and enjoy its emoluments. According to the law as it then stood, he had to take the proper oaths before the governor, and obtain his approval of his official bond. Neither of these, it is said, he did, and it is insisted that his failure to do so, continued Mr. Purnell in his office as comptroller, under his election in 1857, until his successor was

duly qualified.   In this view we concur.   We hold that Mr.
Purnell, until the 8th of May 1861, was lawfully entitled to
exercise the powers and perform the functions of the office;
and that, on his resignation, the governor had the constitu-
tional power to appoint his successor, but not necessarily for
the full period intervening between the appointment and next
general election; but until the party declared to be entitled
to the office should duly qualify.   And in this conclusion we
are fully justified.

In construing a Constitution, it must be taken as a whole,
and every part of it, as far as possible, interpreted in reference
to the general and prevailing principle.   So far as the comp-
troller is concerned, it is manifest that it was the purpose of
the authors of the Constitution to endow the people with the
right to select that officer.   They contemplated the possibility
of a vacancy in the office, and authorized the governor to fill
it, because the general system in relation to the fiscal affairs
of the State should not be interrupted.   This evidently was
the reason for conferring on the governor the power to fill a
vacancy: it never could have been their sole purpose to con-
fer on him additional patronage; if that had been the case,
they would not have given to the people the right to elect:
they meant, by the delegation of the power to the governor,
merely to provide against the expense and necessity of another
election before the regular term of holding elections to fill the
vacancy.   It seems to us to be inconsistent with the whole
sense and purport of the Constitution, to so construe it as to
give to the governor the power to defeat and put aside the
will of the people, as expressed by them at the polls, under
the Constitution and laws: in framing the first section of the
6th Article, they evidently contemplated no such case as the
one now before us.   They could not have intended to em-
brace cases of contested election for comptroller, and this, to
us, is obvious, if for no other reason, from the fact that they
have authorized provision to be made for the decision of such
cases.   They undoubtedly designed that whenever a decision
should be given, that it was to have some effect, and not to
be treated as a mere nullity; otherwise, it would be to ascribe

State of Maryland *vs.* Jarrett & Harwood.

to them the folly of authorizing and providing for a *useless* and *expensive* inquiry. We hold, therefore, that when the House of Delegates decided that A. Lingan Jarrett was elected to the office, he was placed in the same attitude toward it as he would have been had he been returned by the judges of election as having been elected to it; and if, for any defect in the then law, or on the part of its administrators, he was prevented from qualifying himself for entering on the duties of the office, it was competent to the Legislature to pass an enabling Act like that of June 21st, last, enabling him to do so.

It was conceded, by the appellant's counsel, in argument, that if Mr. Jarrett had been duly qualified, by taking the oath and filing his bond, during the time Mr. Purnell was holding over, he would be lawfully entitled to the office as against Mr. Purnell. But it was argued that Purnell's resignation, and the appointment of Dr. Claude by the governor, placed Claude in a better position than Purnell occupied. This cannot be the true construction of the Constitution. It rests exclusively upon the construction of the 1st section of the 6th Article, and, if adopted, would lead inevitably to the conclusion that the incumbent of the office of comptroller, at *any time* after an election, and before the qualification of his successor, duly elected, may, by resigning his office, make it necessary for the governor to fill the vacancy by appointment, and such appointee would be entitled to hold till the next election. This is not the true construction of the Constitution. In such case—as in the case before us—the appointment of the governor is *ad interim* only; and such appointee is subject to be divested whenever the person duly elected shall qualify, according to law.

The only remaining inquiry is, whether Jarrett has been duly qualified, under the Act of June 1861?

It is conceded that the oath of office has been taken, as required by the Constitution and laws, but it is objected that the bond given by him is insufficient, because it had been before tendered to the governor, and not accepted by him, and that he ought to have been required to give another bond.

42    v. 17

State of Maryland *vs.* Jarrett & Harwood.

It is not pretended that the bond is not in proper form, or that the sureties are insufficient. Nor does it appear that the governor refused to accept it for either of those reasons. It is said, that having been executed originally for the purpose of being presented to the governor for approval, and not being accepted, it could not be binding on the sureties, if afterwards accepted by another officer, authorized by law to accept it.

This argument rests upon the principle that a delivery is necessary to the validity of a bond. But it is clear that, in this case, the bond was not delivered till it was approved by the proper officer, on the 9th of July 1861. A statutory bond is not delivered or binding on the obligors till it is approved. 7 *Md. Rep.*, 201. In the case of *Brown & Cawood, vs. Murdock & Brawner*, a question as to the validity of a statutory bond was determined by this court, which, we think, conclusively answers the objection of the appellant's counsel in this case. See 16 *Md. Rep.*, 522.

Having shown that Jarrett, in our opinion, has the legal right, and as an injunction is not a matter *ex debito justitiæ*, but resting, for the most part, in the conscience of the court, none such should issue against him. There is no case authorizing an injunction against one having the legal right, and but few where the right is doubtful, except in cases to stay waste, or prevent the destruction of the thing.

The public interest, which is supposed to be involved in this case, is a sufficient reason for having considered at length the question of title, which was fully argued at the bar.

*Order affirmed.*

(Decided Oct. 8th, 1861.)

TUCK, J.

I concur in the affirmance of the order refusing the injunction, for the reasons stated in the opinion filed by the Chief Justice, in behalf of the court; but I deem it unnecessary, in this case, to express any opinion on the title to the office of comptroller.

*Note by the Reporter:*—It will be observed that in this case no motion was made to dismiss the appeal, and no question raised or argued on either side as to the *right of appeal* in such a case, under *Art.* 5, *sec.* 25 of the *Code*, as was done in the case of *Steigerwald vs. Winans, et al., ante.*