The Flint and Fentonville Plank-road Company v. George S. Woodhull.

*Private corporation: Charter: Legislative power.*    While the charter of a private corporation is a law, it is also something more than a law, in that it contains stipulations which are terms of compact between the state as the one party and the corporation as the other, which neither party is at liberty to disregard or repudiate, and which are as much removed from the modifying and controlling power of legislation as would be contracts between two private parties.

*Legislative discretion.*    In collecting information to guide its legislative discretion, the legislature will choose its own methods, and the courts must assume that they were the suitable and proper ones, and that they led to proper results. The legislature is not to be supposed to have acted improperly, unadvisedly, or from any other than public motives under any circumstances, when acting within the limits of its authority.

*Legislative action.*    A legislative act, not violative of any constitutional provision or principle, must, when assailed, be its own sufficient and conclusive evidence of the justice, propriety, and policy of its passage.

*Judicial authority.*    But the legislature cannot, except in a few cases where it is needful to enable it to perform properly its legislative functions, exercise authority judicial in its nature.

*Private corporation: Charter: Repeal: Judicial proceeding.*    Where the charter of a private act of incorporation contains a provision that it shall not be

FLINT AND FENTONVILLE PLANK-ROAD CO. v. WOODHULL.

repealed "unless it shall be made to appear to the legislature that there has
been a violation by the company of some of the provisions" of the charter,
the question of violation is a judicial question, and the charter cannot-be
repealed until the violation has been made to appear to the legislature by some
proper judicial proceeding.

*Charter: Violation: Legislative determination.* Where, therefore, the legislature
passed an act, not purporting to be based upon any such finding, but simply
providing that the charter "be and the same is hereby repealed:"—
*Held,* That if such act could be regarded as a legislative determination that
a violation of charter had taken place, it would nevertheless be void, as an
attempt at the exercise by the legislature of judicial power.

*Legislative action: No appeal to the courts: Questions of private right.* Such an
act could not be sustained subject to a right in the corporators to have the
question of violation tried in the courts afterwards. There can be no appeal
to the courts from the conclusions of the legislature in matters within its juris-
diction; and the act, if valid for any purpose, must be conclusive. But the
legislature cannot pass finally upon questions of private right.

Heard April 25. Decided April 30.

Error to Genesee Circuit.

O. F. Wisner and G. V. N. Lothrop, for plaintiff in error.

M. E. Crofoot and C. I. Walker, for defendant in error.

COOLEY, J.

The legislature of 1848 passed an act incorporating the
Flint & Fentonville Plank-road Company, with power to lay
out, establish and construct a plank-road, and all necessary
buildings, from the village of Flint to the village of Fen-
tonville. The act was to remain in force for sixty years
from and after its passage, but the fourth section provided
that "the legislature may at any time alter, amend, or
repeal this act, by a vote of two-thirds of each branch
thereof; but such alteration, amendment, or repeal shall
not be made within thirty years of the passage of this act,
unless it shall be made to appear to the legislature that
there has been a violation by the company of some of the
provisions of this act." The fifth section made the general
plank-road act of 1848 a part of this special charter.—*Laws.*
*1848, p. 404.*

The corporators appear to have organized under their charter, and to have constructed the road provided for by it, a part of which they now keep up and maintain.     In 1871, the legislature passed an act to repeal this charter. This act is very brief, has no preamble, contains no recitals, and simply declares that the act first above named "be and the same is hereby repealed."—*Sess. L. 1871, Vol. 3, p. 167.* No notice was given to the company or to any of its officers, of the intention to adopt or to propose any such repeal, or to enter upon any investigation of a violation by the company of any of the provisions of its charter; neither the journals of the legislature, nor the files or records in the office of the secretary of state, show that any such investigation was ever had, nor is it claimed or suggested that there is evidence anywhere that any tribunal, legislative or judicial, has passed upon the question of such a violation, and adjudged it to have taken place, unless the repealing act itself affords such evidence.     The company denies the validity of this act, and the defendant, having treated it as valid, and acted upon it adversely to their interests, an issue has been made, which is now before us for decision.

It is not disputed on the part of the defendant that the charter of a private corporation is to be regarded as a contract, whose provisions are binding upon the state, and cannot be set aside at the will of the legislature.     Such a charter is a law, but it is also something more than a law, in that it contains stipulations which are terms of compact between the state as the one party, and the corporators as the other, which neither party is at liberty to disregard or repudiate, and which are as much removed from the modifying and controlling power of legislation as would be the contracts of private parties.     But the defendant insists that the repealing act in this case is one contemplated and

justified by the contract itself; and no attempt is made to defend it, except upon what the defendant regards as a just construction of the original charter.    The positions taken by the defendant may be succinctly stated as follows:

1. The legislature had a right to repeal the charter whenever the fact should be made to appear that a violation of the charter had taken place.

2. The inquiry into the fact of violation would be an inquiry for the purpose of enabling the legislature to exercise its legitimate powers, and would, therefore, be legislative in character, and might be entered upon in any manner and through any channels the legislative wisdom might devise or see fit to employ, untrammeled by any of the rules which govern the action of judicial tribunals.

3. The repealing act is not only of itself a determination that the violation of charter has taken place, but it is evidence, also, that the legislature has first informed itself of the facts; and no court or other authority is at liberty to assume that it has acted improvidently or without due inquiry.

4. But, although all presumptions favor the legislative action, it is conceded that the parties concerned are entitled to a judicial investigation afterwards, and upon an issue properly framed for that purpose, may show the act invalid by establishing the fact that no violation of the charter has taken place, and that the legislature must have acted under mistake or in misapprehension of the facts.

The first of these positions must be conceded.    The right of the legislature to repeal, when it was properly made to appear that a breach of the charter had taken place, cannot be questioned.

The second will be equally indisputable, if the main point be established, that the inquiry to determine the violation of the charter is legislative in character.    The legis-

lature will not only choose its own modes of collecting information to guide its legislative discretion, but from due courtesy to a co-ordinate department of the government, we must assume that those methods were the suitable and proper ones, and that they led to correct results. And if the records show no investigation, we must still presume the proper information was obtained; for we must not suppose the legislature to have acted improperly, unadvisedly, or from any other than public motives, under any circumstances, when acting within the limits of its authority.—*Baltimore v. State, 15 Md., 376 ; Lusher v. Scites, 4 W. Va., 11 ; People v. Draper, 15 N. Y., 545, 555 ; Wright v. Defrees, 8 Ind., 302 ; Ex parte McCardle, 7 Wal., 514 ; Bradshaw v. Omaha, 1 Neb., 16; Humboldt Co. v. Churchill Co. Com'rs, 6 Nev., 30.*

The third point must also be conceded to this extent; that a legislative act, not violative of any constitutional principle, must be its own sufficient and conclusive evidence, when assailed, of the justice, propriety, and policy of its passage. We ourselves acted upon this principle in *People v. Mahaney, 13 Mich., 484,* and it is not disputed anywhere so far as we are aware.

But there lies at the basis of all these propositions the question whether the determination that the charter has been violated, is in truth legislative in character. The defendant affirms that it is; the plaintiff insists that it is properly and essentially judicial. This point decided one way, disposes of the case; decided the other, it is followed by others of a difficult and somewhat delicate nature, which would necessarily be considered before a conclusion could be reached on the merits.

Now it must be conceded that, if the act in question is not judicial in character, it is at least strikingly analogous. There is a question which is or may be disputed, there

are adverse parties, there are private interests involved, there is evidence to be received, there is the fact to be found, there is punishment to be inflicted, there is a forfeiture to be enforced.    Legislative action does not often, to say the least, include all, or many, of these elements.   It may affect private rights incidentally, but it does not often proceed to pass directly upon the controversies between the state and individuals.    In some cases the legislature has judicial power, because it is incident and essential to the discharge of legislative functions. · Such is its power to determine upon the election and qualification of its members, and the power to punish for contempts of its authority.    In these cases it is entitled to all the presumptions which support the action of courts, and having no authority set over it, to review its determinations, they must be accepted everywhere as correct and conclusive.—*People v. Mahaney, 13 Mich., 481; Anderson v. Dunn, 6 Wheat., 204; Hiss v. Bartlett, 3 Gray, 468 ; Burnham v. Morrissey, 14 Gray, 226 ; State v. Matthews, 37 N. H., 450 ; State v. Jarrett, 17 Md., 309 ; Lamb v. Lynd, 44 Penn. St., 336*.    But every judgment must have something preceding it to put the judicial body in motion; the sentence, by any authority pronounced, however august or powerful, will be a mere idle fulmination if there was no *lis mota* to base it upon. The order of a legislative body for the punishment of an individual would be merely idle and void, unless somewhere in the record there appeared a cause alleged which subjected him to its jurisdiction for such punishment.

It is conceded in the present case that the fact of corporate abuse was to be found before the charter could be taken away.    The repealing act, however, is only a sentence.    It inflicts the penalty of corporate death, without in any way declaring or intimating, except by the penalty, that the corporation has been found worthy of death.    It

is precisely such an act as might have been passed had the legislative power been unlimited and untrammeled. The legislature had power to repeal for cause, and was prohibited from repealing without cause; it repeals, expressing no cause, and it is said the cause must be inferred. Then comes what is to have the effect of a punishment, though it does not purport to be such, and only on its face appears to be the withdrawal of a privilege; and yet, as there was a right assured and no mere privilege to be withdrawn, it is supposed we must infer, *first*, that a punishment was designed, and then, from the punishment infer the guilt, the accusation, the trial, and the conviction. Having thus assumed the conclusion to begin with, we must next, from the conclusion, assume that the premises existed to deduce it from. This is certainly much more than can be assumed in support of the action of any court. In the courts, there must at least be an accusation and a condemnation, before there can be the infliction of any penalty. To infer cause where none is assigned, in the taking away of private rights, is to take up and adopt the arguments in favor of the arbitrary arrests under the command of Charles I. His warrants assigned no cause, and, therefore, it was argued, sufficient cause must be presumed. If this repealing act is good as a judgment of abuse of corporate privileges, then Sir Nicholas Hyde was correct in holding that he could not release on *habeas corpus* the parties committed to prison by the special command of the king for refusing to submit to his illegal exactions. The king had power to order a committal for cause; no cause was expressed; therefore a sufficient cause was to be assumed.—*Darnel's Case, 3 State Trials, 1; Broom's Const. L., 162.*

The defendant refers to certain cases in support of his positions, of which *The Miner's Bank v. The United States, Morris, 482, S. C., 1 Greene, Iowa, 553,* goes to the full

extent of holding that such a legislative act is not only valid, but 'is conclusive that cause existed for its passage. This case, however, stands alone, and was not very much insisted upon, on the argument. The cases of *Crease v. Babcock, 23 Pick., 334,* and *Erie & N. E. R. R. Co. v. Casey, 26 Penn. St., 287,* are more relied upon as laying down the correct rule. The Pennsylvania case is most directly in point, and as it appears to have been carefully considered, the conclusion is entitled to great respect, notwithstanding those eminent jurists, Mr. Chief Justice Lewis and Mr. Justice Woodward dissented. In that case the corporation was protected by a clause in its charter similar to the one under consideration here, and the legislature had thought proper to act upon it by repealing the charter, without any preliminary judicial investigation. In stating the position assumed in support of the repealing act, Mr. Justice Black says: " For the defendant, it is insisted that the repealing act is itself not only evidence, but conclusive evidence, that the company had previously committed some abuse or misuse which justified the repeal. No case has been cited which denies this doctrine in terms; and it was held for the true rule by the supreme courts of Iowa (*1 Greene, 561*) and of New York (*19 Barb., 81*). But I do not see clearly the principle on which it can stand. A legislative body in a matter like this is known to proceed without formal notice, without specific accusation, and without opportunity to answer. There is no confronting of the parties with the witnesses, nor any thing that can be called a hearing or trial. It would, therefore, seem unjust to hold that a legislative act is, like a judicial sentence, conclusive of every fact which ought to have been found before it was passed. It might more plausibly be likened to an award made by an umpire to whom both parties have agreed that the

subject should be referred." "For myself," he says, " I. incline to the opinion that, when the constitutional power of the legislature to pass a law depends on matter of fact,. the party to be affected by it ought to have an opportunity afterwards of showing how the fact is."—*E. & N. E. R. R.. Co. v. Casey, 26 Penn. St., 316.*

Having thus expressed the opinion that legislative con-- clusions on questions of fact were subject to review in the courts, the learned judge goes further, and proceeds to lay down rules for the legislative guidance in determining the causes which are to justify the legislature in acting at all. The legislature is not to judge finally for itself what is abuse or misuse of corporate privileges by a company; but,

1. The illegal act must be *positive.* A mere omission,. like the failure of a bank to make its annual returns, is not enough.

2. A disregard of the charter, which is injurious only to *private* interests, and which, therefore, admits of *private* compensation, is not, he thinks, within the fair meaning of the words. It must be some conduct which infringes upon a right reserved by a state for the benefit of the public.

3. It must be *willful*; that is, not involuntary, acci- dental, or the consequence of mere mistake of fact.

4. It must not be the mere transgression of the act of incorporation by a subordinate officer, or agent without authority, express or implied, from the board of directors.— *Ibid., p. 319.*

Thus the majority of the supreme court of Pennsylvania lays down the rules of law which are to control the legis- lature in the exercise of its legislative authority, and at the same time, declares the right of the court to review the conclusions of the legislative body in matters of fact.

With great respect for that eminent tribunal, we are unable to understand why this is not a setting of the court above the legislature, as an appellate tribunal in matters both of law and of fact, in a manner which wholly ignores the division of powers in the constitution, and is quite inconsistent with the harmonious operation of the machinery of government. It is not consistent with legislative independence and dignity, that the courts should assert a right to sit in judgment upon legislative action, or to attribute to the legislature erroneous or oppressive conduct in the exercise of any of its proper and legitimate functions.   These two departments of the government being co-ordinate, and neither of them occupying a position subordinate to the other, the conclusions of each must be accepted by the other as proceeding from good motives, and as warranted by the proper information.   It could only be productive of endless discord and confusion, not to say of jealousies and conflicts of authority, if the legislature was to review and set aside the judgments of the courts, or the courts to allow parties to appeal to them from the conclusions the legislature had reached, in determining upon the propriety of passing or declining to pass a proposed law.   Careful endeavor has been made to prevent any such jealousies and conflicts when, in framing our constitutions, a line of distinction has been drawn between legislative and judicial functions, and the departments to which these functions respectively have been confided, have been entrusted with no power to pass that line.   It is, therefore, in the highest degree impertinent and obtrusive, when either department undertakes to advise the other, that in the exercise of its proper functions, it has acted unwisely and indiscreetly; has misjudged the facts or perverted the law; and its action must be still more offensive, if it entertains the appeal of parties from the decisions of the other, when acting within

a province which was set apart to be peculiarly under its jurisdiction and control.

Moreover, there is, in the nature of the case, and the difference in the manner in which legislative and judicial functions are performed, reason sufficient to demonstrate the impossibility of a proper review by the one department of the decisions the other has made. Legislators have a right to act upon their own knowledge and observation, upon hearsay, upon information derived from the public press, upon the *ex parte* petitions of interested parties, upon any thing, in short, which satisfies their judgment; and public opinion is one of the most important facts, to be considered in determining upon the propriety or advisability of a proposed law. Even an unreasonable prejudice, if general or wide spread, may sometimes very properly be a controlling consideration when the case is such that to the enforcement of the law a strong supporting public sentiment would be a necessity. But these are things the courts must not allow to influence their action. With them the question must be simply, *first*, what is the law; and *second*, what are the facts; and the facts they must reach through inflexible rules of evidence laid down for their guidance. A review of a legislative determination by the courts would, therefore, not only be highly indecorous and objectionable for the reasons already stated, but it would be eminently improper also, for the further reason, that it could not possibly be had upon the same evidence. It is wholly foreign to any proper administration of law or justice, that the decision of the proper authority upon any subject should be liable to review by another tribunal, which in such review is shut off from the sources of information to which the other had access. So far, therefore, from the different ways the legislature and the judiciary have of reaching the facts being a reason why the latter should give parties who

have been decided against by the former a re-hearing, they
constitute with us a very conclusive reason for holding that
those cases in which there is a hearing to be had on ques-
tions of private right and private property, are, and must
in their very nature be, regarded as exclusively of judicial
cognizance.

But there are still further reasons why the doctrine
declared in the Pennsylvania case, cannot, we think, be
sound.    That doctrine is—to state it more fully—that,
though the legislature may repeal the corporate charter, on
the ground of abuse or misuse, thereby taking away from
the corporators the franchise of greater or less property
value, yet the legislative decision is only *prima facie* cor-
rect, and the parties are entitled to have it set aside in the
courts afterwards, on showing by evidence that they have
not been guilty of such abuse or misuse.    In other words,
the legislative act, which may perhaps be passed without
any notice, is to stand as a conviction of guilt until the
parties charged can prove their innocence.  But their inno-
cence of what?    In other cases it would be thought the
grossest perversion of right and justice if, in any proceeding
in court, the party was to be presumed guilty of any one
specific charge until he proved himself innocent; but that
case would be a much less serious departure from the rules
of justice than this.    The general plank-road act of 1848
was made a part of this company's charter, and it contained
a great many provisions to be observed by it, and for a
violation of some of them, specific penalties were imposed.
The company has been in operation upwards of twenty
years, when its franchise is taken away on a presumption
of guilt, which is only to be removed by the corporators
proving that in all that time they have observed every pro-
vision of their charter, and been guilty of no default.    It
is safe to say that what is required of them is, and would

be, in any such case, a simple impossibility. It is as if an individual should be charged generally, and without further specification, with an offense against the criminal laws, and the trial-court should say to him: " You are charged, and *prima facie* convicted, of crime, but you shall be relieved of the conviction on making proof that you have never disobeyed the law. Meantime, and until you do so, the state will take from you your property, in punishment for your presumed guilt."

Now it is simply impossible that any doctrine which leads to such results can be sound. But the illustrations of its anomalous and unjust character might be multiplied indefinitely; and if it were possible for the question of corporate default to be fairly tried under it, it must be remembered, also, that as the question would or might arise between individuals and the company, as it has in this instance, there might be repeated trials of the same question, none of which would be conclusive in a new suit. The question involved in each suit would be the validity of a statute, dependent upon the facts, and therefore to be submitted to a jury; and while the jury in one cause might hold it valid, another in a different case, acting upon somewhat different evidence, or influenced by more persuasive advocates, might declare it void; and thus it would be a law to-day as to one party, and no law to-morrow as to another; and so on indefinitely, according to the varying views which different panels of jurymen might take of disputed facts; until, perhaps, the state would be compelled to interfere by *quo warranto*, and have, after all these proceedings, the authoritative adjudication which sound policy, not less than correct principle, demanded at the beginning. But we need hardly say that a law, if valid at all, must be valid from its enactment, and cannot be made to depend

upon the opinion of a jury as to the sufficiency of the reasons for its being passed.

We are constrained, therefore, from all these considerations, to say that the determination whether a corporation has violated its charter is judicial in its nature.    It requires the action of those tribunals which must hear before they condemn, and must proceed upon inquiry.    If it were properly legislative, it may be that the legislature must be presumed to have given a hearing; but the fact, as we have seen, in this case, is otherwise, and the cases in which presumptions are to be indulged against the facts, ought not to be multiplied.    It is sufficient to say that, in our opinion, the case is one in which the party is entitled to a trial of right *in fact*, and cannot be put off with one which rests exclusively in a presumption of law, indulged against the fact.    The violation of the charter cannot be legally made to appear, except on trial in a tribunal whose course of proceeding is devised for the determination of questions of this nature.

We think this the fair construction of that clause of the charter which is in question.    It is not to be presumed that the legislature designed to take upon itself judicial powers; and as the act does not necessarily require that construction, it should not be given it.    We must suppose that an inquiry in some proper form was contemplated, by means of which and on fair trial it should be made to appear to the legislature that a cause existed justifying repeal.    Any other view renders the stipulation worthless as a protection; but this view protects the interests of corporators, and at the same time enables the legislature to exercise its power of taking away the charter, even though the violation of corporate duty might not be of that serious character which would seem to justify declaring a forfeiture on judicial pro-

ceedings instituted, independent of this clause. The repealing act, it must be assumed, was passed through inadvertence, and probably under the impression that the charter, like many others in this state, was subject to repeal in the legislative discretion.

This being our view, it follows that the judgment of the circuit court must be reversed, with costs, and a new trial granted.

CHRISTIANCY, CH. J., and CAMPBELL, J., concurred.

GRAVES, J., did not sit in this case.