# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Corbin R. Davis

## SMITTER v THORNAPPLE TOWNSHIP

Docket No. 144354. Argued January 9, 2013 (Calendar No. 3). Decided June 19, 2013.

Robert Smitter sought workers' compensation benefits after he was injured while working as a firefighter for Thornapple Township. At the time of his injury, Smitter was also employed by General Motors Corporation, earning approximately 11 percent of his total wages with the township and 89 percent of his wages with General Motors. The township paid Smitter wage-loss benefits under the Worker's Disability Compensation Act (WDCA), MCL 418.101 *et seq*. Smitter also received benefits pursuant to a disability insurance policy fully funded by the township. The township did not reduce its workers' compensation obligation by coordinating Smitter's workers' compensation benefits with his disability benefits under MCL 418.354(1)(b). The township initially sought reimbursement from the Second Injury Fund under the dual-employment provisions, MCL 418.372, for the entirety of Smitter's wage-loss benefits. The fund agreed to pay the amount it would have owed if the township had coordinated Smitter's benefits. The township filed an application for a hearing with the Worker's Compensation Board of Magistrates, seeking reimbursement from the fund for the uncoordinated amount of wage-loss benefits. Relying on *Rahman v Detroit Bd of Ed*, 245 Mich App 103 (2001), the magistrate ordered the fund to reimburse the township for 89 percent of Smitter's uncoordinated wage-loss benefits. The Workers' Compensation Appellate Commission (WCAC)[1] affirmed the magistrate's decision. The Court of Appeals denied the fund's application for leave to appeal. *Smitter v Thornapple Twp*, unpublished order of the Court of Appeals, entered April 5, 2010 (Docket No. 294768). In lieu of granting leave to appeal, the Supreme Court remanded the case to the Court of Appeals for consideration as on leave granted. 488 Mich 917 (2010). On remand, the Court of Appeals, TALBOT, P.J., and FITZGERALD and MARKEY, JJ., affirmed the decision of the WCAC in an unpublished opinion per curiam, issued November 22, 2011 (Docket No. 294768). The Supreme Court granted leave to appeal. 491 Mich 917 (2012).

In an opinion by Chief Justice YOUNG, joined by Justices MARKMAN, KELLY, and ZAHRA, the Supreme Court *held*:

If an injured worker was engaged in more than one employment at the time of injury, the WDCA apportions liability between the employment that caused the injury and the Second Injury Fund. When the injury employment provided less than 80 percent of the employee's

---

[1] Now the Michigan Compensation Appellate Commission. Executive Order No. 2011-6; MCL 445.2032.

wages, the fund is required to reimburse its portion of the benefits due the employee. Because the fund's liability is dependent on the employer's liability and coordination of the employer's benefits is compulsory, the fund is required to reimburse its portion of the benefits due on the basis of the coordinated amount of benefits. *Rahman v Detroit Bd of Ed*, 245 Mich App 103 is overruled.

1. Under MCL 418.351(1), while the incapacity for work resulting from a personal injury is total, the employer shall pay the injured employee weekly benefits of 80 percent of the employee's after-tax average weekly wage. MCL 418.354 provides for the coordination of benefits, reducing an employer's obligation to pay weekly wage benefits under the WDCA when the injured employee simultaneously receives payments in accordance with specified benefit programs, including a disability policy. Specifically, the statute, using the mandatory word "shall," requires that the employer's worker's compensation obligation be reduced by the after-tax amount of the payments received under a disability policy provided by the employer. Contrary to *Rahman*, coordination under MCL 418.354(1) is compulsory rather than permissive. *Rahman* failed to address the significance of MCL 418.354(15), which identifies the narrow group of employers that the Legislature has permitted to waive the coordination of benefits, including those employing volunteer firefighters. By specifically defining the circumstances under which an employer may waive coordination of benefits, the Legislature by implication prohibited all other employers from waiving coordination of benefits. Because the holding in *Rahman* contravened the plain language of the statute, it was overruled. Except with regard to those employments identified in MCL 418.354(15), the coordination of benefits is mandatory and reduces the employer's obligation to pay weekly wage-loss benefits as a matter of law. Any additional sum of weekly wage-loss benefits volitionally provided by the employer has no effect on the employer's obligation to pay weekly benefits under the law.

2. The dual-employment provisions of the WDCA, MCL 418.372, apportion liability for an injured employee's workers' compensation benefits when the employee was engaged in more than one employment at the time of injury. The statute provides that if the injury employment provided 80 percent or less of the employee's average weekly wage at the time of the injury, the employer is liable for the same percentage of the injured employee's weekly benefits as his or her average weekly wage from the injury employment bore to his or her total weekly wages. The Second Injury Fund is separately but dependently liable for the remainder of the weekly benefits. The fund is liable only for its portion of the benefits due the employee. The benefits due the employee are those that are owed to the employee. The amount due the employee by the fund is the fund's portion of the employer's remaining obligation under the act, which is the balance due after the application of the coordination provisions. The fund is not required to reimburse the employer for any additional amount that the employer voluntarily elects to provide to an injured employee.

3. Under the statutory scheme, the township was obligated to pay Smitter weekly wage-loss benefits in the amount of 80 percent of his after-tax average weekly wage. Because Smitter also received benefits pursuant to a disability policy that the township fully funded, under MCL 418.354 the township's worker's compensation obligation had to be reduced by the after-tax amount of benefits that Smitter received under the disability policy. The township's remaining worker's compensation obligation was reduced to the balance due after coordination. Under the

dual-employment provisions, Smitter's weekly wage-loss benefits had to be apportioned between the township and the Second Injury Fund because the township provided less than 80 percent of his wages. The township was liable for 11 percent of Smitter's coordinated weekly benefits, and the fund was separately but dependently liable for the remaining 89 percent of Smitter's coordinated weekly benefits.

Judgment of the Court of Appeals reversed; case remanded to the magistrate for further proceedings.

Justice CAVANAGH, dissenting, asserted that Smitter was a volunteer firefighter for purposes of applying MCL 418.354(15), and, thus, that the township was permitted to provide Smitter with uncoordinated benefits. Because the majority recognized that MCL 418.354(15) permits the employer of a volunteer firefighter to provide its employees with uncoordinated benefits, the majority's conclusion that benefits coordination is mandatory except in the employment circumstances listed in MCL 418.354(15) was dictum, as was its decision to overrule *Rahman*. Although the parties had conceded that Smitter was not a volunteer firefighter for purposes of applying MCL 418.354(15), the Court is not bound by the parties' concessions regarding the law. MCL 418.354(15) applies to volunteer firefighters who are considered employees pursuant to MCL 418.161(1)(a), which, in turn, refers to those in the service of a township under a contract of hire. Applying the statutory language, Smitter satisfied the contract-of-hire requirement as interpreted by the majority in *Hoste v Shanty Creek Mgt, Inc*, 459 Mich 561 (1999). Because Smitter was a volunteer firefighter who was considered an employee under MCL 418.161(1)(a), the township could forgo the coordination provision in MCL 418.354(1)(b). At the time of Smitter's injury, MCL 418.372(3) stated that the allocation provisions of MCL 418.372 did not apply to volunteer public employees entitled to benefits under MCL 418.161(1)(a), which would have included Smitter. Thus, the apportionment provisions were inapplicable. Because MCL 418.372 did not apply, under MCL 418.351(1), the township was liable for all of Smitter's workers' compensation benefits and the fund had no liability.

Justice MCCORMACK, dissenting, would have affirmed the decision of the Court of Appeals. Although the word "shall" generally implies a mandatory directive, context can undercut the application of that general principle. In this case, the majority's conclusion that the township was required to coordinate benefits was undercut by the text of the WDCA. Under MCL 418.354(1), it is the employer's obligation to pay benefits that may be reduced by coordination, not the Second Injury Fund's obligation. Thus, the decision to coordinate rests with the employer, and the fund's liability is not implicated. Further, there is no language in MCL 418.372(1)(b), under which the Second Injury's Fund's liability is determined, that refers to the possibility of benefit coordination. Nor is there any language in MCL 418.354 referring to the Second Injury Fund. In other words, the Legislature chose not to connect the two sections. Under the majority's analysis, both MCL 418.354(1) and (15) are implicated only in the dual-employment context, and then only when the injury employer provides 80 percent or less of the injured employee's average weekly wage; the supposedly mandatory language of MCL 418.354(1) imposes no requirements in situations in which there is only one employer, or when the injury employer provides more than 80 percent of the injured employee's average weekly wage. To read MCL 418.354(1) as imposing a requirement on a subset of injury employers in

dual-employment cases renders that supposedly mandatory language meaningless in a majority of situations.  Justice MCCORMACK was reluctant to interpret the statutory terms in a manner that would lead to that anomalous result.

Justice VIVIANO took no part in the decision of this case.

©2013 State of Michigan

# Opinion

| | |
|---|---|
| Chief Justice: | Justices: |
| Robert P. Young, Jr. | Michael F. Cavanagh |
| | Stephen J. Markman |
| | Mary Beth Kelly |
| | Brian K. Zahra |
| | Bridget M. McCormack |
| | David F. Viviano |

FILED JUNE 19, 2013

STATE OF MICHIGAN

SUPREME COURT

ROBERT SMITTER,

      Plaintiff-Appellee,

v                                 No. 144354

THORNAPPLE TOWNSHIP and
MICHIGAN MUNICIPAL LEAGUE
WORKERS' COMPENSATION FUND,

      Defendants-Appellees,

and

SECOND INJURY FUND,
            Defendant-Appellant.

BEFORE THE ENTIRE BENCH (except VIVIANO, J.)

YOUNG, C.J.

Plaintiff was injured in the course of his employment as a part-time firefighter for defendant Thornapple Township. At the time of his injury, plaintiff was also employed by another employer. Thornapple Township paid plaintiff the maximum weekly wage

loss benefits under the Worker's Disability Compensation Act (WDCA),[1] and plaintiff additionally received benefits pursuant to a disability insurance policy provided by the township. Thornapple Township did not reduce its workers' compensation liability by coordinating plaintiff's workers' compensation benefits with his disability benefits under MCL 418.354(1)(b). Subsequently, Thornapple Township sought reimbursement from the Second Injury Fund[2] under the dual employment provisions, MCL 418.372, based on the uncoordinated amount of wage loss benefits.

The issue to be determined in this case is the amount that the fund is required to reimburse an employer for its portion of an injured employee's weekly benefits when the employer fails to coordinate benefits. We hold that the coordination of benefits is mandatory, except in very narrow employment circumstances that are inapplicable in this case. Coordination of benefits serves to reduce the amount of weekly benefits an employer is legally obligated to pay an employee under the WDCA. Any additional sum of weekly benefits volitionally provided by the employer does not alter the employer's *statutory obligation* to the injured employee.

If an injured worker was engaged in more than one employment at the time of injury, the WDCA apportions liability between the employment that caused the injury and the Second Injury Fund. When the employment that caused the injury provided less than 80 percent of the employee's wages, the fund is required to reimburse its "portion of

---

[1] MCL 418.101 *et seq.*

[2] See MCL 418.501(1).

2

the benefits due the employee . . . ."[3]  Because the fund's liability is "dependent" upon the employer's liability, and coordination of the employer's benefits is compulsory, the fund is required to reimburse its portion of the benefits due on the basis of the coordinated amount of benefits.  We reverse the judgment of the Court of Appeals and remand this case to the magistrate for further proceedings consistent with this opinion.

## I.  FACTS AND PROCEDURAL HISTORY

The parties submitted this case under stipulated facts.  Plaintiff, Robert Smitter, was employed both as a part-time firefighter for Thornapple Township and as an employee of General Motors Corporation.  Smitter earned approximately 11 percent of his total wages with Thornapple Township and 89 percent of his wages with General Motors.  On May 3, 2005, Smitter sustained a work-related injury while fighting a fire.  He was disabled from both employments for approximately 26 weeks.  Given his average weekly wage, Smitter was entitled to workers' compensation wage loss benefits at the maximum rate of $689 a week.  Smitter also received $800 a week in "Sickness & Accident" benefits pursuant to a disability insurance policy fully funded by Thornapple Township.  The township did not coordinate the benefits paid from the disability insurance policy against its workers' compensation obligation.  Rather, the township voluntarily paid the state maximum rate of wage loss benefits to plaintiff, in addition to the benefits plaintiff received pursuant to the insurance policy.

---

[3] MCL 418.372(1)(b).

3

Initially, Thornapple Township sought reimbursement from the Second Injury Fund in the amount of $17,897.87 for the entirety of plaintiff's wage loss benefits. The fund agreed to pay $2,077.99—the amount of its liability if the township had coordinated plaintiff's benefits. On February 2, 2007, Thornapple Township filed an application for a hearing, seeking reimbursement from the Second Injury Fund for "wage loss benefits attributable to earnings from General Motors Corporation" for plaintiff's period of disability. Relying on *Rahman v Detroit Board of Education*,[4] the magistrate ordered that the fund reimburse Thornapple Township in the amount of $15,966.75, representing 89 percent of the uncoordinated wage loss benefits paid to Smitter.

The Workers' Compensation Appellate Commission (WCAC)[5] affirmed the decision of the magistrate. The majority commiserated with the fund's being required to "support the Township's public policy of treating its firefighters to benefits beyond the statutory requirements," agreeing with the fund that it was "unfair to allow an employer to forfeit coordination and force another party to fund that choice."[6] However, because *Rahman* controlled the facts of the case, the fund could "not take advantage of the injury employer's[7] entitlement to coordination unless the employer coordinates benefits."[8]

---

[4] *Rahman v Detroit Bd of Ed*, 245 Mich App 103; 627 NW2d 41 (2001).

[5] Now the Michigan Compensation Appellate Commission. Executive Order No. 2011-6; MCL 445.2032.

[6] *Smitter v Thornapple Twp*, 2009 Mich ACO 175, p 3.

[7] The "injury employer" is the employer the injured party was working for at the time of the injury.

The Court of Appeals initially denied the fund's application for leave to appeal,[9] but this Court remanded the case to the Court of Appeals for consideration as on leave granted.[10] On remand, the Court of Appeals affirmed the decision of the WCAC.[11] The panel noted that it was bound to follow *Rahman* pursuant to MCR 7.215(J)(1), that the holding in *Rahman* was consistent with the statutory language, and that there was no principled reason for distinguishing *Rahman* from the present case. This Court granted the Second Injury Fund's application for leave to appeal.[12]

## II. STANDARD OF REVIEW

While this Court's review of a decision by the WCAC is limited, we review de novo questions of law in a workers' compensation case.[13] Likewise, questions of statutory interpretation are questions of law reviewed de novo.[14]

---

[8] *Id.*

[9] *Smitter v Thornapple Twp*, unpublished order of the Court of Appeals, entered April 5, 2010 (Docket No. 294768).

[10] *Smitter v Thornapple Twp*, 488 Mich 917 (2010).

[11] *Smitter v Thornapple Twp*, unpublished opinion per curiam of the Court of Appeals, issued November 22, 2011 (Docket No. 294768).

[12] *Smitter v Thornapple Twp*, 491 Mich 917 (2012).

[13] *Rakestraw v Gen Dynamics Land Sys, Inc*, 469 Mich 220, 224; 666 NW2d 199 (2003); MCL 418.861; MCL 418.861a(14).

[14] *Dep't of Transp v Tomkins*, 481 Mich 184, 190; 749 NW2d 716 (2008).

In interpreting a statute, our obligation is to discern the legislative intent that may reasonably be inferred from the words actually used in the statute.[15] "A fundamental principle of statutory construction is that 'a clear and unambiguous statute leaves no room for judicial construction or interpretation.'"[16] When the statutory language is unambiguous, the proper role of the judiciary is simply to apply the terms of the statute to the facts of the particular case.[17] In addition, words used by the Legislature must be construed and understood in accordance with their common, ordinary meaning.[18]

## III. ANALYSIS

## A. RELEVANT STATUTORY PROVISIONS

In order to analyze properly the issues presented in this case, we must examine the interplay between several provisions of the WDCA.

There is no question that plaintiff received an injury arising out of and in the course of his employment with Thornapple Township.[19] Because plaintiff was completely disabled for approximately 26 weeks, MCL 418.351(1) describes the township's liability for weekly wage loss benefits. It provides in relevant part:

---

[15] *White v Ann Arbor*, 406 Mich 554, 562; 281 NW2d 283 (1979).

[16] *In re Certified Question (Kenneth Henes Special Projects Procurement v Continental Biomass Indus)*, 468 Mich 109, 113; 659 NW2d 597 (2003), quoting *Coleman v Gurwin*, 443 Mich 59, 65; 503 NW2d 435 (1993).

[17] *Rakestraw*, 469 Mich at 224.

[18] MCL 8.3a; *Massey v Mandell*, 462 Mich 375, 380; 614 NW2d 70 (2000).

[19] See MCL 418.301.

6

While the incapacity for work resulting from a personal injury is total, the employer shall pay, or cause to be paid as provided in this section, to the injured employee, a weekly compensation of 80% of the employee's after-tax average weekly wage, but not more than the maximum weekly rate of compensation, as determined under [MCL 418.355]. Compensation shall be paid for the duration of the disability.

MCL 418.354 provides for the coordination of benefits, reducing an employer's obligation to pay weekly wage benefits under the WDCA when an employee simultaneously receives payments in accordance with specified benefit programs. At the time of plaintiff's injury,[20] MCL 418.354 provided in relevant part as follows:

(1) This section is applicable when either weekly or lump sum payments are made to an employee as a result of liability pursuant to [MCL 418.351, MCL 418.361, or MCL 418.835] with respect to the same time period for which old-age insurance benefit payments under the social security act, 42 U.S.C. 301 to 1397f; payments under a self-insurance plan, a wage continuation plan, *or a disability insurance policy provided by the employer*; or pension or retirement payments pursuant to a plan or program established or maintained by the employer, are also received or being received by the employee. Except as otherwise provided in this section, *the employer's obligation to pay or cause to be paid weekly benefits other than specific loss benefits under [MCL 418.361(2)] and (3) shall be reduced by these amounts:*

* * *

(b) *The after-tax amount of the payments received or being received* under a self-insurance plan, a wage continuation plan, or *under a disability insurance policy provided by the same employer from whom benefits under [MCL 418.351, MCL 418.361, or MCL 418.835] are received if the employee did not contribute directly to the plan or to the payment of premiums regarding the disability insurance policy. . . .*

* * *

---

[20] Although the statute was subsequently amended by 2011 PA 266, the provisions relevant to this case have remained substantively unaltered.

7

(2) To satisfy any *remaining obligations* under [MCL 418.351, MCL 418.361, or MCL 418.835], the employer shall pay or cause to be paid to the employee *the balance due in either weekly or lump sum payments after the application of subsection (1).*

* * *

(15) With respect to volunteer fire fighters, volunteer safety patrol officers, volunteer civil defense workers, and volunteer ambulance drivers and attendants who are considered employees for purposes of this act pursuant to [MCL 418.161(1)(a)], *the reduction of weekly benefits provided for disability insurance payments under subsection (1)(b) and (c) and subsection (11) may be waived by the employer.* An employer that is not a self-insurer may make the waiver provided for under this subsection only at the time a worker's compensation insurance policy is entered into or renewed.[21]

MCL 418.372, known as the dual employment provision, apportions liability for an injured employee's workers' compensation benefits when the employee was engaged in more than one employment at the time of injury. At the time of plaintiff's injury, the statute provided in relevant part as follows:

(1) If an employee was engaged in more than 1 employment at the time of a personal injury or a personal injury resulting in death, the employer in whose employment the injury or injury resulting in death occurred is liable for all the injured employee's medical, rehabilitation, and burial benefits. Weekly benefits shall be apportioned as follows:

(a) If the employment which caused the personal injury or death provided more than 80% of the injured employee's average weekly wages at the time of the personal injury or death, the insurer or self-insurer is liable for all of the weekly benefits.

(b) If the employment which caused the personal injury or death provided 80% or less of the employee's average weekly wage at the time of

---

[21] MCL 418.354. as amended by 1987 PA 21 (emphasis added).

the personal injury or death, the insurer or self-insurer is liable for that portion of the employee's weekly benefits as bears the same ratio to his or her total weekly benefits as the average weekly wage from the employment which caused the personal injury or death bears to his or her total weekly wages. *The second injury fund is separately but dependently liable for the remainder of the weekly benefits. The insurer or self-insurer has the obligation to pay the employee or the employee's dependents at the full rate of compensation. The second injury fund shall reimburse the insurer or self-insurer quarterly for the second injury fund's portion of the benefits due the employee or the employee's dependents.*

\* \* \*

(3) This section does not apply to volunteer public employees entitled to benefits under [MCL 418.161(1)(a)].[22]

Reading these statutory provisions together, it is clear that, as a starting point, Thornapple Township is obligated by MCL 418.351 to pay Smitter weekly wage loss benefits in the amount of 80 percent of his after-tax average weekly wage, subject to the maximum weekly cap imposed by MCL 418.355, for the duration of his disability.

Because Smitter received benefits pursuant to a disability insurance policy provided by Thornapple Township "with respect to the same time period"[23] as the township's obligation to pay weekly wage loss benefits pursuant to MCL 418.351, the coordination of benefits provisions are implicated. As Thornapple Township fully funded the disability policy, its "obligation to pay" weekly wage loss benefits "*shall be*

---

[22] MCL 418.372, as added by 1980 PA 357 (emphasis added). MCL 418.372 was amended by 2012 PA 83, which amended subsection (3) to read "This section does not apply to individuals entitled to benefits under [MCL 418.161(1)(d), (e), (f), (g), (h), (i), (j), and (o)]."

[23] MCL 418.354.

9

*reduced*" by the after-tax amount of benefits Smitter received under the policy.[24] The township's "remaining obligations" regarding Smitter's wage loss benefits under MCL 418.351 are thus reduced to "the balance due" after coordination.[25]

Lastly, because Smitter was engaged in more than one employment at the time of his injury, the dual employment provisions of MCL 418.372 are applicable. While Thornapple Township remains liable for all of Smitter's medical and rehabilitation benefits, Smitter's weekly wage loss benefits are apportioned between the township and the Second Injury Fund because "the employment which caused the personal injury" provided less than 80 percent of Smitter's wages at the time of his injury.[26] The township is liable for the same percentage of Smitter's weekly benefits as his average weekly wage from the township bore to his total wages. In other words, because Smitter earned 11 percent of his weekly wages with the township, it is liable for 11 percent of Smitter's weekly benefits. The fund is "separately but dependently liable" for the remaining 89

---

[24] MCL 418.354(1)(b) (emphasis added).

[25] MCL 418.354(2). At oral argument, the parties agreed that plaintiff is not a volunteer firefighter, one of the very few employments to which "the reduction of weekly benefits provided for disability insurance payments . . . may be waived by the employer." MCL 418.354(15). Indeed, the parties submitted this case under stipulated facts, including the stipulation that Smitter was employed as a "paid part-time firefighter . . . ." This Court has distinguished between stipulations of *fact*, which are binding on the judiciary, *Dana Corp v Employment Security Comm*, 371 Mich 107, 110; 123 NW2d 277 (1963), and stipulations of *law*, which are not binding, *In re Finlay Estate*, 430 Mich 590, 595; 424 NW2d 272 (1988). Thus, Justice CAVANAGH's reliance on *Union Guardian Trust Co v Zack*, 274 Mich 108, 113; 264 NW 309 (1936), which involved an admission of law, is inapposite.

[26] MCL 418.372(1)(b).

percent of Smitter's weekly benefits, representing the percentage of weekly benefits attributable to Smitter's employment with General Motors.[27]  While the township must provide weekly benefits to Smitter "at the full rate of compensation," the fund is required to reimburse the township for its "portion of the benefits due the employee . . . ."[28]

## B.  COORDINATION OF BENEFITS

Relying on *Rahman v Detroit Board of Education*, Thornapple Township argues that the fund is liable for reimbursement of its portion of the uncoordinated amount of benefits and cannot reduce its liability by claiming entitlement to the coordinated amount, particularly given that the township has "exercised its right" not to coordinate benefits.

In *Rahman*, the plaintiff suffered a back injury during the course of his employment with the Detroit Board of Education.  At the time of injury, Rahman was also employed with the city of Detroit, earning 46 percent of his wages from the board of education and the remaining 54 percent of his wages from the city of Detroit.  The magistrate ordered an open award of benefits and further held that the fund had reimbursement liability under the dual employment provisions because the board provided less than 80 percent of Rahman's average weekly wage.

Rahman also received a pension from the board of education, although the facts do not indicate whether the Board coordinated Rahman's weekly wage loss benefits.  The

---

[27] *Id.*

[28] *Id.*

fund argued that the amount it was required to reimburse the board should be based on the coordinated amount of benefits. The Court of Appeals rejected the fund's claim, providing the following analysis:

> [T]he coordination of benefits provision . . . applies if an employee receives worker's compensation benefits at the same time he receives pension or retirement payments pursuant to a plan or program maintained or established by an employer. [MCL 418.354(1)] provides that "the employer's obligation to pay or cause to be paid weekly benefits other than specific loss benefits . . . shall be reduced by [specified] amounts . . . ." A plain reading of the subsection indicates that the employer's obligation to pay the employee benefits *may be reduced* by the amount of pension the employer pays to the employee.
>
> We reject the [Second Injury Fund's] argument that the total amount of worker's compensation benefits *payable to plaintiff* should be reduced by the amount of the pension benefits plaintiff receives from the board. Again, we consider the clear and unambiguous language of the statute. [MCL 418.354] provides for a reduction in an employer's obligation to pay benefits if that employer provides the employee a pension. This reduction is clearly premised on the fact that the employer is providing another wage benefit to the employee; the statute *allows the employer* to coordinate that benefit with its obligation to pay worker's compensation wage-loss benefits to the employee. It is apparent from the language of the statute that the Legislature intended that the employer whose employment caused an injury alone may *take advantage* of the coordination provisions. There is no suggestion that the [Second Injury Fund], in a dual employment situation, may take advantage of the injury-employer's *entitlement* to coordination. Therefore, the [Second Injury Fund's] argument is rejected.[29]

While *Rahman* claimed to follow the unambiguous language of the statute, it failed to do so. Contrary to *Rahman*'s holding that an employer's obligation to pay weekly benefits "*may* be reduced," MCL 418.354(1) provides that the employer's

---

[29] *Rahman*, 245 Mich App at 120-121 (third alteration in original) (emphasis altered) (citation omitted).

12

obligation "*shall* be reduced" by the requisite amounts listed in the statute. The Legislature's use of the word "shall" generally indicates a mandatory directive, not a discretionary act.[30]

Furthermore, *Rahman* failed to recognize or address the significance of MCL 418.354(15).[31] This provision explicitly delineates the narrow group of employers that the Legislature has permitted to waive the "reduction of weekly benefits" that is otherwise compelled by the coordination provisions: those employing "volunteer fire fighters, volunteer safety patrol officers, volunteer civil defense workers, and volunteer ambulance drivers and attendants who are considered employees for purposes of this act pursuant to [MCL 418.161(1)(a)] . . . ."[32] Moreover, the scope of allowable waiver encompasses only "disability insurance payments under subsection (1)(b) and (c) and subsection (11) . . . ."[33] By specifically outlining the parameters under which an employer may permissibly waive coordination of benefits, the Legislature by implication prohibited *all other employers* who do not meet the specifications from waiving

---

[30] *Costa v Community Emergency Med Servs*, 475 Mich 403, 409; 716 NW2d 236 (2006); *Burton v Reed City Hosp Corp*, 471 Mich 745, 752-754; 691 NW2d 424 (2005); *Tobin v Civil Serv Comm*, 416 Mich 661, 667; 331 NW2d 184 (1982); *Smith v Amber Twp Sch Dist*, 241 Mich 366, 368-369; 217 NW 15 (1928).

[31] Through 1983 PA 159 the Legislature enacted MCL 418.354(15) and redesignated former subsections (15) to (17). MCL 418.354(15) has remained unaltered since that time.

[32] MCL 418.354(15).

[33] *Id*.

13

coordination of benefits.[34]  Such a conclusion is incompatible with *Rahman*'s holding that the coordination of benefits is a discretionary "entitlement" that may be claimed or relinquished at the pleasure of *any* employer.[35]  While *Rahman* decried the notion that "the total amount of worker's compensation benefits payable to plaintiff should be reduced by the amount of the pension benefits plaintiff receives," that is *precisely* what MCL 418.354(1) requires.  Because the holding in *Rahman* contravenes the plain language of the statute, it is overruled.

Thus, with the exception of those employments falling within the limits described in MCL 418.354(15), an employer's obligation to pay weekly benefits under the WDCA "shall be reduced" by the corresponding amounts listed in MCL 418.354(1).  The coordination of benefits is mandatory, not discretionary, and reduces an employer's obligation to pay weekly wage loss benefits as a matter of law.  As a practical consideration, an injured worker is unlikely to protest if an employer consciously chooses to pay the employee in excess of what the law requires.  However, any additional sum of weekly wage loss benefits volitionally provided by the employer "[f]or its own policy

---

[34] Under the doctrine of *expressio unius est exclusio alterius* (the expression of one thing is the exclusion of another), the specification in a statute of one particular class excludes all other classes.  *Pittsfield Charter Twp v Washtenaw Co*, 468 Mich 702, 712; 664 NW2d 193 (2003); *Dave's Place, Inc v Liquor Control Comm*, 277 Mich 551; 269 NW 594 (1936); *Detroit v Redford Twp*, 253 Mich 453, 455-456; 235 NW 217 (1931).

[35] *Rahman*, 245 Mich App at 121.

reasons" has no effect on the employer's obligation to pay weekly benefits under the law.[36]

## C. THE SECOND INJURY FUND'S LIABILITY

MCL 418.372(1)(b) apportions liability between the fund and the injury employer when the employee was engaged in more than one employment at the time of his injury *and* the injury employer provided 80 percent or less of the employee's average weekly wage.[37] The statute does not require reimbursement of any additional amount that the employer voluntarily elects to provide to an injured employee—it only provides that the fund is liable for its "portion of the benefits *due* the employee . . . ." Consistent with the common understanding of the word "due," the benefits due the employee are those that are *owed* to the employee.[38]

---

[36] Despite the unambiguous meaning of the word "shall," Justice MCCORMACK opines that an injury employer may avoid coordinating its compensation obligation under the WDCA because to hold otherwise would prohibit "employers and employees from freely entering into employment contracts under terms as they see fit." Nothing in this opinion affects the right of an employer to agree to provide any contractual benefit to its employees that it wishes to offer. We have announced no limiting legal principle that would prohibit an injury employer, either by gratuitous impulse or a negotiated contract provision, from providing benefits in excess of its obligation under the WDCA. However, we do conclude, applying the language of the WDCA, that the injury employer in a dual employment situation must bear the cost of its munificence and cannot require the fund to subsidize its choices.

[37] When the injury employer provided *more* than 80 percent of the employee's average weekly wage, there is no apportionment of liability. The injury employer is "liable for all of the weekly benefits." MCL 418.372(1)(a).

[38] *Random House Webster's College Dictionary* (1996), p 413 (defining "due" as "owing or owed[.]")

15

In determining the amount "due" the employee, we note that under the explicit language of the statute, the fund has dependent or contingent liability[39] for the remainder of the weekly benefits for which the injury employer would ordinarily be liable[40] but for the apportionment of liability provided in MCL 418.372.[41] Thus, the fund's reimbursement liability is expressly conditioned on the injury employer's statutory liability. As discussed above, the application of MCL 418.354 to reduce an employer's liability under the WDCA is compulsory and may not be avoided except in very narrow circumstances.[42] Therefore, the amount "due the employee"[43] is the fund's portion of the employer's "remaining obligation[]" under the act, which is described as "the balance due in either weekly or lump sum payments *after the application of*" the coordination provisions.[44] Thus, the fund is obligated to reimburse the employer for its "portion of the

---

[39] *Random House Webster's College Dictionary* (1996), p 363 (defining "dependent" as "conditioned or determined by something else; contingent[.]")

[40] See MCL 418.351; MCL 418.361.

[41] MCL 418.372(1)(b) imposes liability on the fund for that portion of weekly benefits attributable to the injured employee's concurrent employment. See *Lawrence v Toys R Us*, 453 Mich 112, 128; 551 NW2d 155 (1996) ("[T]he fund is only subject to liability for benefits in respect to the wage-earning capacity lost at the concurrent employment.").

[42] We note that the *very same* employments permitted to waive the coordination of benefits under MCL 418.354(15) are specifically *excluded* from the apportionment of liability under the dual employment provisions pursuant to MCL 418.372(3). Thus, when the coordination of benefits is properly waived, the fund has absolutely no reimbursement liability in a dual employment situation.

[43] MCL 418.372(1)(b).

[44] MCL 418.354(2) (emphasis added).

16

benefits due the employee"[45] after the application of MCL 418.354.[46]  The fund is not required to reimburse the employer for any additional amounts of benefits that do not reflect the employer's liability under the act.

Thornapple Township argues that "strong public policy" considerations support its position and that providing an injured firefighter with full workers' compensation benefits as well as disability benefits provides an "incentive" for its employees to engage in firefighting services.  However, the public policy of Michigan is not to be determined by what a majority of this Court deems desirable or appropriate at a given time.  Rather, the public policy of Michigan must be "clearly rooted in the law" as "reflected in our state and federal constitutions, our statutes, and the common law."[47]  Moreover, this Court may not substitute its policy preferences for those policy decisions that have been clearly provided by statute.[48]  In this instant case, it is clear from the mandate contained in MCL 418.354(1) that the public policy of Michigan, as articulated *by the Legislature*,

---

[45] MCL 418.372(1)(b).

[46] This conclusion is further supported by the fact that MCL 418.354(1) refers to "the employer's obligation."  The only time "obligation" appears in MCL 418.372(1)(b) is in the third sentence, which addresses the "obligation" to "pay the employee . . . at the full rate of compensation."  When MCL 418.372(1)(b) mentions the employer alone and the fund alone, the provision refers to their "liab[ilities]."  Therefore, it is reasonable to conclude that the reference in MCL 418.354(1) to "the employer's obligation" refers to "the full rate of compensation," not just the amount for which the employer alone is "liable."  If the full rate must be coordinated, then the fund's liability to reimburse an employer necessarily occurs after coordination.

[47] *Terrien v Zwit*, 467 Mich 56, 66-67; 648 NW2d 602 (2002).

[48] See generally *Devillers v Auto Club Ins Ass'n*, 473 Mich 562, 588-593; 702 NW2d 539 (2005).

is to prevent duplicative wage loss payments while maintaining "suitable wage-loss benefits."[49] Additionally, the Legislature has unequivocally indicated that the public policy of Michigan prohibits the employees of fire departments and police departments from receiving "like benefits" from both a municipality and the WDCA.[50] MCL 418.161(c) provides:

> Police officers, fire fighters, or employees of the police or fire departments, or their dependents, in municipalities or villages of this state providing like benefits, may waive the provisions of this act and accept like benefits that are provided by the municipality or village but are not entitled to like benefits from both the municipality or village and this act. However, this waiver does not prohibit those employees or their dependents from being reimbursed under [MCL 418.315] for the medical expenses or portion of medical expenses that are not otherwise provided for by the municipality or village. This act shall not be construed as limiting, changing, or repealing any of the provisions of a charter of a municipality or village of this state relating to benefits, compensation, pensions, or retirement independent of this act, provided for employees.

Because the policy arguments advanced by Thornapple Township stand in stark contradiction to the public policy pronouncements of the Legislature, they must fail.

## IV. CONCLUSION

We conclude that the Second Injury Fund is required to reimburse an employer for the fund's portion of the benefits due the employee on the basis of the coordinated

---

[49] See *Drouillard v Stroh Brewery Co*, 449 Mich 293, 299-300; 536 NW2d 530 (1995).

[50] See *Crowe v Detroit*, 465 Mich 1, 8-10; 631 NW2d 293 (2001) (providing that "like benefits" are those that are similar in their salient features).

18

amount of weekly benefits.  We reverse the judgment of the Court of Appeals and remand this case to the magistrate for further proceedings consistent with this opinion.

Robert P. Young, Jr.
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra

STATE OF MICHIGAN

SUPREME COURT

ROBERT SMITTER,

      Plaintiff-Appellee,

v                            No. 144354

THORNAPPLE TOWNSHIP and
MICHIGAN MUNICIPAL LEAGUE
WORKERS' COMPENSATION FUND,

      Defendants-Appellees,

and

SECOND INJURY FUND,

      Defendant-Appellant.

_____

CAVANAGH, J. (*dissenting*).

I respectfully dissent from the majority opinion because I believe that Robert Smitter was a "volunteer fire fighter[]" for purposes of applying MCL 418.354(15) of the Michigan Worker's Disability Compensation Act (WDCA),[1] and, thus, Thornapple Township was permitted to provide Smitter with uncoordinated benefits. While I do not necessarily disagree with Justice McCORMACK's conclusion that the WDCA may allow *all* employers to decide whether to coordinate workers' compensation benefits and disability insurance benefits, I do not believe that it is necessary to decide that issue in

---

[1] MCL 418.101 *et seq.*

this case. Rather, because the majority recognizes that MCL 418.354(15) permits the employer of a volunteer firefighter to provide its employees with uncoordinated benefits, I believe that the majority's conclusion that benefits coordination is mandatory except in the employment circumstances listed in MCL 418.354(15) is unnecessary dictum. Likewise, I believe that the majority's decision to overrule *Rahman v Detroit Bd of Ed*, 245 Mich App 103; 627 NW2d 41 (2001), is also dictum.

Although both parties stated at oral argument that Smitter was not a volunteer firefighter for purposes of applying MCL 418.354(15) because he was paid, this Court is not bound by the parties' concessions regarding the law. See, e.g., *Union Guardian Trust Co v Zack*, 274 Mich 108, 113; 264 NW 309 (1936).[2] Accordingly, I believe that the majority errs by relying solely on the parties' concessions without considering more closely whether those concessions comport with the applicable statutory provisions.

In order to determine whether Smitter was a volunteer firefighter for purposes of MCL 418.354(15), we must look more closely at the language of that subsection:

> With respect to volunteer fire fighters, volunteer safety patrol officers, volunteer civil defense workers, and volunteer ambulance drivers and attendants who are considered employees for purposes of [the WDCA]

---

[2] I recognize that the parties submitted this case under stipulated facts, including the fact that Smitter was a "paid part-time firefighter . . . ." However, as my subsequent analysis explains, a paid employee may nevertheless be a "volunteer" *as that word is used in MCL 418.354(15)*. Thus, my analysis engages in statutory interpretation to determine the meaning of "volunteer" as used in MCL 418.354(15). It is well established and universally accepted that statutory interpretation presents a *question of law*. See, e.g., *Klooster v City of Charlevoix*, 488 Mich 289, 295; 795 NW2d 578 (2011). Accordingly, contrary to the majority's claim, this Court's common refusal to be bound by parties' concessions regarding the law clearly applies to this Court's interpretation of the meaning of "volunteer" as used in MCL 418.354(15).

2

pursuant to section 161(1)(a),[3] the reduction of weekly benefits provided for disability insurance payments under subsection (1)(b) and (c) and subsection (11) may be waived by the employer. An employer that is not a self-insurer may make the waiver provided for under this subsection only at the time a worker's compensation insurance policy is entered into or renewed.

Importantly, MCL 418.354(15) provides that it applies to "volunteer fire fighters . . . who *are considered employees for purposes of* [*the WDCA*] *pursuant to section 161(1)(a) . . . .*" (Emphasis added.) MCL 418.161(1)(a), in turn, defines "employee" as "[a] person in the service of the state, a county, city, township, village, or school district, under any appointment, *or contract of hire*, express or implied, oral or written." (Emphasis added.) Thus, although MCL 418.354(15) refers to "volunteer fire fighters," in my view, subsection (15) applies to volunteer firefighters who are "under any . . . contract of hire," which may include *paid* firefighters.[4]

This Court addressed the "contract of hire" language in MCL 418.161(1) at length in *Hoste v Shanty Creek Mgt, Inc*, 459 Mich 561; 592 NW2d 360 (1999).[5] The *Hoste*

---

[3] MCL 418.161(1)(a).

[4] The idea that a "volunteer" firefighter may receive compensation is not a foreign concept in the realm of employment benefits. For example, the Employment Security Act, MCL 421.1 *et seq.*, recognizes that "volunteer" firefighters may be paid and expressly excludes a "volunteer" fire fighter's wages, up to a defined amount, from consideration in determining his or her unemployment benefit rate. MCL 421.27(c)(2) ("The weekly benefit rate shall not be reduced under this subdivision for *remuneration received* for on-call or training services *as a volunteer firefighter*, if the volunteer firefighter receives less than $10,000.00 in a calendar year for services as a volunteer firefighter.") (emphasis added).

[5] I remain committed to the dissent in *Hoste*. See *Hoste*, 459 Mich at 579-586 (MARILYN KELLY, J., dissenting). However, because I conclude that the result in this case is the same under either the majority or dissenting opinions in *Hoste*, I will apply the majority opinion for purposes of this dissent.

majority first stated that the phrase "contract of hire" "connote[s] payment of some kind." *Id.* at 574-575. The majority supported that conclusion by noting that the Legislature "designed worker's compensation to be a safety net to provide '*income maintenance* for persons who have met misfortune or whose *regular income source* has been cut off.'" *Id.* at 575, quoting *Franks v White Pine Copper Div*, 422 Mich 636, 654; 375 NW2d 715 (1985). *Hoste* explained that the "of hire" portion of the phrase distinguishes between gratuity or accommodation and a payment. Specifically, the majority stated that gratuity does not satisfy the "of hire" requirement because "worker's compensation provides benefits to those who have lost a source of income; it does not provide benefits to those who can no longer take advantage of a gratuity or privilege that serves merely as an accommodation." *Hoste*, 459 Mich at 575. Finally, *Hoste* summarized by stating that in order to satisfy the "of hire" requirement in MCL 418.161(1), "compensation must be payment intended as wages," which the majority defined as "real, palpable and substantial consideration as would be expected to induce a reasonable person to give up the valuable right of a possible claim against the employer in a tort action and as would be expected to be understood as such by the employer." *Id*. at 576.[6]

Applying the statutory language as written, in my view, Smitter satisfied the "contract of hire" requirement under the definition of "employee" as interpreted by the

---

[6] I recognize that the version of MCL 418.161(1) in place at the time *Hoste* was decided expressly included volunteer firefighters in the definition of "employee," see *Hoste*, 459 Mich at 578, whereas the version of MCL 418.161(1) applicable in this case does not. However, because MCL 418.354(15) continues to refer to MCL 418.161(1)(a), I believe that *Hoste*'s analysis remains relevant. The change in statutory language and its impact on this case will be discussed in greater detail later in this dissent.

*Hoste* majority. Both parties agree that Smitter received wages as compensation for the time he spent working as a firefighter. Thus, I think that Smitter was a "volunteer fire fighter[] . . . who [is] considered [an] employee[] . . . pursuant to section 161(1)(a) . . . ." MCL 418.354(15). Accordingly, I think that the next provision of MCL 418.354(15) applies: "the reduction of weekly benefits provided for disability insurance payments under [MCL 418.354(1)(b)] . . . may be waived by the employer." Therefore, I think that Thornapple may forgo the coordination provision in MCL 418.354(1)(b) in this case and instead provide Smitter with uncoordinated workers' compensation and disability insurance benefits.

Accepting that MCL 418.354(15) applies in this case and allows Thornapple to provide Smitter with uncoordinated benefits, the next question is how that conclusion affects the Second Injury Fund's (SIF) liability for workers' compensation benefits. That question is answered by reviewing the apportionment statute, MCL 418.372. Specifically, at the time of Smitter's injury, MCL 418.372(3) expressly stated that the allocation provisions in MCL 418.372 do "not apply to volunteer public employees entitled to benefits under section 161(1)(a)."[7] In my view, because Smitter was a "volunteer fire fighter" who was "considered [an] employee[] for purposes of [the WDCA] pursuant to section 161(1)(a)" under MCL 418.354(15), he was a "volunteer public employee[] entitled to benefits under section 161(1)(a)" for purposes of MCL 418.372(3). Thus, I think that MCL 418.372(3) applies and the apportionment provisions are inapplicable in this case. Indeed, the majority opinion acknowledges that this is the

---

[7] MCL 418.372 was later amended by 2012 PA 83.

5

proper interpretation of the relevant statutory provisions.  See *ante* at 16 n 42 ("[T]he *very same* employments permitted to waive the coordination of benefits under MCL 418.354(15) are specifically *excluded* from the apportionment of liability under the dual employment provisions pursuant to MCL 418.372(3).").

Because MCL 418.372 does not apply, this case returns to a simple application of MCL 418.351(1), which provides that "the employer shall pay, or cause to be paid as provided in this section, to the injured employee, a weekly compensation of 80% of the employee's after-tax average weekly wage . . . ."  In short, Thornapple is liable for *all* of Smitter's workers' compensation benefits, and the SIF has no liability.[8]  Again, the majority agrees with this result.  See *ante* at 16 n 42 (stating that when MCL 418.354(15) and MCL 418.372(3) apply, the SIF has "no reimbursement liability in a dual employment situation").  Thus, because the majority, in my view, erroneously relies exclusively on the parties' concessions that Smitter was not a "volunteer fire fighter" for purposes of MCL 418.354(15) while otherwise agreeing that the employer of a "volunteer fire fighter" may elect to forgo coordination of benefits, I believe that the majority opinion reaches issues that need not be addressed in this case.  Specifically, I do not think that it is necessary to decide whether benefits coordination is mandatory in employment circumstances not listed in MCL 418.354(15).  Moreover, because *Rahman*, 245 Mich App 103, did not address an employment listed in MCL 418.354(15), I think

---

[8] Thornapple would be liable for Smitter's "average weekly wage" based on his income from both jobs (General Motors and Thornapple).  See MCL 418.371(2) (defining "average weekly wage" as "the weekly wage earned by the employee at the time of the employee's injury *in all employment* . . . .") (emphasis added).

6

that opinion is distinguishable and, thus, I believe the majority's decision to overrule *Rahman* is dictum.

Finally, as mentioned previously in footnote 6 of this opinion, I recognize that the current version of MCL 418.161(1) differs from the version of MCL 418.161(1) in place at the time the plaintiff in *Hoste* was injured in 1990. Specifically, former MCL 418.161(1)(a), as amended by 1985 PA 103, explicitly addressed volunteer public employees, including "[m]embers of a volunteer fire department:"

> As used in this act, "employee" means:
>
> (a) A person in the service of the state, a county, city, township, village, or school district, under any appointment, or contract of hire, express or implied, oral or written. A person employed by a contractor who has contracted with a county, city, township, village, school district, or the state, through its representatives, shall not be considered an employee of the state, county, city, township, village, or school district which made the contract, when the contractor is subject to this act. . . . *Members of a volunteer fire department* of a city, village, or township *shall be considered to be employees* of the city, village, or township, and entitled to all the benefits of this act when personally injured in the performance of duties as members of the volunteer fire department. [Emphasis added.]

The current version of MCL 418.161(1)(a) no longer includes a specific reference to "volunteer" public employees; rather, the statute's discussion of those employments, including the reference to "[m]embers of a volunteer fire department," was removed from MCL 418.161(1)(a). However, several new subdivisions were added to the statute that seem to address "volunteer" public employees including "[o]n-call members of a fire department:"

> As used in this act, "employee" means:

7

(a) A person in the service of the state, a county, city, township, village, or school district, under any appointment, or contract of hire, express or implied, oral or written. A person employed by a contractor who has contracted with a county, city, township, village, school district, or the state, through its representatives, shall not be considered an employee of the state, county, city, township, village, or school district that made the contract, if the contractor is subject to [the WDCA].

\* \* \*

(d) *On-call members of a fire department* of a county, city, village, or township *shall be considered to be employees* of the county, city, village, or township, and entitled to all the benefits of this act if personally injured in the performance of duties as on-call members of the fire department *whether the on-call member of the fire department is paid or unpaid. . . .*

(e) *On-call members of a fire department* or an on-call member of a volunteer underwater diving team that contracts with or receives reimbursement from 1 or more counties, cities, villages, or townships *is entitled to all the benefits of this act* if personally injured in the performance of their duties as on-call members of a fire department or as an on-call member of a volunteer underwater diving team *whether the on-call member of the fire department or the on-call member of the volunteer underwater diving team is paid or unpaid.* [MCL 418.161(1) (emphasis added).][9]

Thus, the reference in MCL 418.354(15) to "volunteer fire fighters . . . who are considered employees for purposes of [the WDCA] pursuant to section 161(1)(a)," might be a relic reference to the former version of MCL 418.161(1)(a) that the Legislature failed to revise when it altered the language in MCL 418.161.[10]

Possibly bolstering this conclusion is the fact that MCL 418.372(3) was recently amended by 2012 PA 83. Before the 2012 amendment, MCL 418.372(3) used language

_____

[9] The switch from references to "[m]embers of a volunteer fire department" to "[o]n-call members of a fire department" first occurred in 1994 PA 271.

[10] MCL 418.354(15) has not been amended since it was enacted by 1983 PA 159.

8

similar to MCL 418.354(15).  Former MCL 418.372(3) stated, "This section does not apply to *volunteer public employees* entitled to benefits *under section 161(1)(a)*." (Emphasis added.)  However, as amended by 2012 PA 83, MCL 418.372(3) refers to the new subdivisions of MCL 418.161(1) that expressly address the various employments of "volunteer" public employees, including on-call members of a fire department. Specifically, MCL 418.372(3), as amended by 2012 PA 83, states, "This section does not apply to individuals entitled to benefits *under section 161(1)(d), (e), (f), (g), (h), (i), (j), and (o)*."  (Emphasis added.)  Thus, it appears that MCL 418.354(15) should be similarly revised to refer to "individuals entitled to benefits under MCL 418.161(1)(d), (e), (f), (g), (h), (i), (j), and (o)" rather than the current reference to "volunteer fire fighters . . . who are considered employees for purposes of this act pursuant to section 161(1)(a) . . . ."

Although evidence exists to support the conclusion that the reference in MCL 418.354(15) to MCL 418.161(1)(a) appears to be a legislative oversight in light of subsequent amendments to MCL 418.161(1), this Court must nevertheless attempt to apply the statutes as currently written.  See *Farrington v Total Petroleum, Inc*, 442 Mich 201, 210; 501 NW2d 76 (1993) ("Courts cannot assume that the Legislature inadvertently omitted from one statute the language that it placed in another statute, and then, on the basis of that assumption, apply what is not there.").  See, also, *Flint & Fentonville Plank-Rd Co v Woodhull*, 25 Mich 99, 108 (1872) ("It is not consistent with legislative independence and dignity, that the courts should assert a right to sit in judgment upon legislative action, or to attribute to the legislature erroneous or oppressive conduct in the

9

exercise of any of its proper and legitimate functions.").[11]  Accordingly, while resorting to *Hoste*'s interpretation of "contract of hire" in order to determine how best to classify Smitter's employment with Thornapple for purposes of applying MCL 418.354(15) is the quintessential attempt to fit a square peg into a round hole, it is nevertheless my best effort at determining the most reasonable analysis of the current statutory language.  And, because I believe that *Hoste* leads to the conclusion that Smitter was a "volunteer fire fighter" for purposes of MCL 418.354(15), I dissent from the majority's contrary conclusion and from its decision to overrule *Rahman*, 245 Mich App 103.

Michael F. Cavanagh

---

[11] I maintain the belief that, depending on the circumstances, it may be appropriate for this Court to conclude that a "clerical error in legislative drafting" occurred if a literal interpretation of the statute at issue would create an "absurd result."  See, e.g., *Krajewski v Krajewski*, 420 Mich 729, 739 n 6; 362 NW2d 230 (1984). (CAVANAGH, J., dissenting). Applying the reference in MCL 418.354(15) to MCL 418.161(1)(a) does not, however, create an absurd result in this case.

STATE OF MICHIGAN

SUPREME COURT

ROBERT SMITTER,

      Plaintiff-Appellee,

v                                                                      No. 144354

THORNAPPLE TOWNSHIP and
MICHIGAN MUNICIPAL LEAGUE
WORKERS' COMPENSATION FUND,

      Defendants-Appellees,

and

SECOND INJURY FUND,
              Defendant-Appellant.

_____

MCCORMACK, J. (*dissenting*).

      The majority holds that, in a dual-employment context, the Worker's Disability

Compensation Act (WDCA)[1] mandates an employer's coordination of benefits, such that

the Second Injury Fund[2] is required to reimburse an employer only for a pro rata share of

the coordinated amount of weekly benefits. As a consequence, the majority prohibits

employers and employees from freely entering into employment contracts under terms as

they see fit. While I agree with the majority that this Court's role is to apply the terms of

---

[1] MCL 418.101 *et seq.*

[2] See MCL 418.501(1).

an unambiguous statute to the facts of a particular case, here the applicable sections of the WDCA defy an unambiguous reading. In fact, the relevant statutory provisions at issue do not even refer to one another, much less unambiguously require the majority's interpretation. Because I am generally reluctant to interpret ambiguous statutory terms to impede freedom of contract, and moreover because the majority's reading anomalously applies only to the minority of employers who hire part-time workers, while still allowing the great majority of employers to enter into the employment contracts they deem appropriate, I respectfully dissent.

## I. BACKGROUND

When an employee working two jobs is eligible for WDCA wage-loss benefits, the employer in whose service the employee worked at the time of the injury (the injury employer) is responsible for paying the full amount of those benefits.[3] When the injury employer provided 80 percent or less of the injured employee's average weekly wage, however, the injury employer is ultimately responsible only for that portion of the wage-loss benefits that corresponds to the portion of the employee's average weekly wage that the injury employer provided.[4]

In this case, because Thornapple Township provided only 10.87 percent of Robert Smitter's average weekly wage, Thornapple was ultimately responsible for 10.87 percent of his wage-loss benefits: after paying the full amount of the workers' compensation wage-loss benefits up front, Thornapple claimed entitlement to reimbursement from the

---

[3] MCL 418.351(1).

[4] MCL 418.372(1)(b).

2

Second Injury Fund for 89.13 percent of the amount paid. Had Thornapple paid no other benefits to Smitter, there is no question, and there would have been no dispute, that Thornapple was entitled to recover from the Second Injury Fund 89.13 percent of the wage-loss benefits it paid Smitter. Case closed.

As it happens, however, Thornapple offered Smitter both workers' compensation wage-loss benefits and sickness and accident benefits, which he accepted.[5] Wage-loss benefits, of course, compensate an employee for wages lost as a result of an injury. Sickness and accident benefits, in contrast, cover out-of-pocket expenses associated with lifestyle changes necessitated by an injury.[6] The WDCA allows an injury employer to "coordinate" benefits when that employer also provides alternative benefits, such that an injury employer's initial obligation to pay workers' compensation wage-loss benefits can

---

[5] Smitter received $800 a week in sickness and accident benefits pursuant to the policy purchased by Thornapple. The benefit policy covered part-time firefighters. Thornapple Township hoped to incentivize this job to better recruit qualified candidates and therefore offered its employees disability benefits *along with* workers' compensation wage-loss benefits.

[6] Sickness and accident benefits are essentially disability benefits, and the parties do not dispute that these benefits are provided under a disability insurance policy as described in MCL 418.354(1)(b). MCL 500.3400(1) defines "policy of disability insurance" to "include[] any policy or contract of insurance against loss resulting from sickness or from bodily injury or death by accident, or both, including also the granting of specific hospital benefits and medical, surgical and sick-care benefits to any person, family or group . . . ." Depending on how the relevant insurance policy defines them, disability benefits may be used for in-home assistance, special transportation needs, uncompensated medical needs, or other consequences of an injury apart from lost income. Disability benefits are especially relevant in dangerous occupations like firefighting, in which employment risks are not limited to the lost *wages*, and the injured are likely to require compensation greater than that provided by wage replacement. More generally, there is a robust market for disability insurance.

3

be reduced by the amount of other benefits the injury employer provides.[7]  The statute explicitly states that disability benefits, such as those provided by Thornapple to its part-time firefighters, are among the benefits that can be coordinated.[8]  The crucial question is whether they must be.

## II.  PLAIN LANGUAGE OF THE WDCA

The majority holds that MCL 418.354(1) *mandates* that employers coordinate benefits.  I am not convinced.  In relevant part, § 354(1) states that "the employer's obligation to pay or cause to be paid weekly benefits other than specific loss benefits under [MCL 418.361(2) and (3)] shall be reduced by these amounts[.]"[9]  I agree with the majority that the sickness and accident policy Thornapple provided to Smitter is covered by § 354(1).  The question is whether Thornapple was required to coordinate that coverage with the wage-loss benefits it also paid, or whether it could elect to do so.  The majority believes that the Legislature's use of the word "shall" is dispositive.

I agree with the majority that "shall" generally implies a mandatory directive. But context can occasionally undercut the general principle that the ordinary usage applies.[10]

---

[7] MCL 418.354(1).

[8] MCL 418.354(1)(b).

[9] MCL 418.354(1).

[10] "Though 'shall' generally means 'must,' legal writers sometimes use, or misuse, 'shall' to mean 'should,' 'will,' or even 'may.'  See D. Mellinkoff, Mellinkoff's Dictionary of American Legal Usage 402-403 (1992) ('shall' and 'may' are 'frequently treated as synonyms' and their meaning depends on context); B. Garner, Dictionary of Modern Legal Usage 939 (2d ed. 1995) ('[C]ourts in virtually every English-speaking jurisdiction have held—by necessity—that *shall* means *may* in some contexts, and vice versa.')"

4

In this case, the majority's conclusion is undercut by the text of the WDCA for three reasons.

First, MCL 418.354(1) specifically states that an *employer's* obligation may be reduced by coordination, not the Second Injury Fund's obligation or the employee's bottom-line benefits. This plain language must mean that the decision to coordinate rests with the employer and that the Second Injury Fund's liability is not implicated. If the Legislature intended mandatory benefit coordination it could have more clearly accomplished that in any number of ways. Most simply, it could have omitted the phrase "the employer's obligation to pay or cause to be paid" from the final sentence of MCL 418.354(1). The sentence would then read: "Except as otherwise provided in this section, . . . weekly benefits other than specific loss benefits under [MCL 418.361(2) and (3)] shall be reduced by these amounts[.]"[11] This language would better support the majority's reading because it would be obvious that the Legislature's intent was to ensure that the employee's wage-loss benefits were reduced when the employee also received additional benefits.

Second, MCL 418.372(1)(b) unambiguously sets forth the formula by which the Second Injury Fund's liability is determined. In that subsection, which provides that the Second Injury Fund "is separately but dependently liable for the remainder of the weekly benefits," and "shall reimburse the insurer or self-insurer quarterly for the second injury

---

*Gutierrez de Martinez v Lamagno*, 515 US 417, 432-433 n 9; 115 S Ct 2227; 132 L Ed 2d 375 (1995).

[11] See MCL 418.354(1).

5

fund's portion of the benefits due the employee or the employee's dependents," no reference is made to the possibility of benefit coordination or to MCL 418.354 more specifically.[12] There is no language whatsoever to suggest that the phrase "due the employee" in MCL 418.372(1)(b) should be read to incorporate the ability or obligation to coordinate in MCL 418.354. The converse is also true; while the Legislature refers explicitly to the "second injury fund" and its liabilities in the text of MCL 418.372(1)(b), the absence of any reference to the Second Injury Fund in MCL 418.354 is meaningful. The Legislature could have connected the two sections, but chose not to do so.[13]

Third, the majority argues that MCL 418.354(15), the subsection governing volunteer firefighters, supports its position that benefits coordination is mandatory. The statute states that for volunteer firefighters:

> [T]he reduction of weekly benefits provided for disability insurance payments under subsection (1)(b) . . . may be waived by the employer. An employer that is not a self-insurer may make the waiver provided for under this subsection only at the time a worker's compensation insurance policy is entered into or renewed.[14]

As does MCL 418.354(1), this provision refers explicitly to the employer and decisions made by the employer, not the liability of the Second Injury Fund or the employee's

---

[12] MCL 418.372(1)(b).

[13] The majority argues that the Legislature's use of the word "obligation," as opposed to "liability," in MCL 418.354(1) is a meaningful reference to the third sentence of MCL 418.372(1)(b), which states that "[t]he insurer . . . has the obligation to pay the employee . . . at the full rate of compensation." Again, I believe that if the Legislature had intended for the two sections to be read together, it would have indicated that explicitly instead of using such cryptic means.

[14] MCL 418.354(15).

6

bottom-line benefits. The majority believes that MCL 418.354(15) delineates the only exception to mandatory coordination. But this reading neglects the great majority of cases in which there is no second employer, as well as those in which the injury employer provides more than 80 percent of the injured employee's average weekly wage. Nothing will prevent those employers from choosing to provide uncoordinated benefits to their injured employees, even if the injured employees are not volunteer firefighters or other first responders. Instead, those employers are free to contract as they see fit with respect to benefits in accordance with their employment needs.

This point warrants emphasis: under the majority's analysis MCL 418.354(15) is implicated only in a dual-employment context in which the injury employer provides 80 percent or less of the injured employee's average weekly wage and can, therefore, request reimbursement from the Second Injury Fund. But MCL 418.354 on its face plainly applies to *all* cases, not just those in which the Second Injury Fund is dependently liable. If an employer may *only* waive benefit coordination under the volunteer firefighter provision of MCL 418.354(15), what import would MCL 418.354 have if Thornapple had been Smitter's only employer, or if General Motors had been the injury employer? In either case, the injury employer surely could have chosen to pay its employees whatever benefits it deemed appropriate *without* regard to MCL 418.354(1) or (15).

To read MCL 418.354(1) as imposing a *requirement* on a subset of injury employers in dual-employment cases renders that supposedly mandatory language meaningless in a majority of situations.[15] The majority's analysis requires us to assume

---

[15] "It is a maxim of statutory construction that every word of a statute should be read in such a way as to be given meaning, and a court should avoid a construction that would

7

away the textual clues that undercut application of the common understanding of the verb "shall" and to overlook the fact that, under the majority's interpretation, the language of MCL 418.354(1) is inapplicable to most cases. The plain language of the WDCA does not make that analysis easy. If the touchstone of our analysis remains the plain language of the statute, I would refrain from reading such particular intent into MCL 418.354(1) and (15) because there is no clear indication that this is what the Legislature intended.[16]

### III. THE PUBLIC POLICY ARTICULATED BY THE LEGISLATURE

The majority's view that the statute requires coordination of benefits by injury employers who provide less than 80 percent of an employee's wage in dual-employment contexts (the minority injury employer) is undermined by the many contexts in which that rule is not enforceable. As previously noted, single employers and injury employers who are responsible for more than 80 percent of an employee's weekly wage will never seek reimbursement from the Second Injury Fund and are thus free to contract with their employees to provide insurance as they deem appropriate. In addition, the non-injury employer in a dual-employment situation may provide the injured employee with an insurance benefit without triggering any obligation to coordinate before seeking reimbursement from the Second Injury Fund because the statute only addresses the

---

render any part of the statute surplusage or nugatory." *In re MCI Telecom Complaint*, 460 Mich 396, 414; 596 NW2d 164 (1999). It seems irrational that the Legislature would announce a mandatory directive that would apply only in a minority of situations, and I presume that the Legislature acts thoughtfully and rationally.

[16] "[A] court should refrain from speculating about the Legislature's intent beyond the words employed in the statute." *In re MCI*, 460 Mich at 414-415.

8

coordination of benefits provided by the "same employer."[17] It is hard to imagine that the Legislature intended to prevent benefits beyond wage-loss benefits in those cases where there is a minority injury employer in a dual-employment situation. It makes far more sense that the Legislature intended to give an employer providing both wage-loss and accident benefits the possibility of reducing its wage-loss obligation, if that employer deemed it appropriate.

To reiterate, MCL 418.354(1)(b) only directs the "same employer" to coordinate benefits. The fact that coordination is not required when an injured employee receives an additional benefit from a different employer is evidence that that the Legislature did not intend this section to limit the amount of benefits an employee *received*.[18] If Smitter had received accident insurance from General Motors, there would have been no dispute that Thornapple would have been responsible for paying full wage-loss benefits and also been entitled to a full reimbursement by the Second Injury Fund. This limitation of the coordination provision to the benefits provided by the injury employer is yet further evidence that coordination is not mandated before reimbursement is sought. The Legislature's decision *not* to require coordination of benefits among employers implies that the Legislature *did* anticipate that some employees would recover benefits apart from the weekly wage-loss benefits and did not see any need to address that issue.

---

[17] MCL 418.354(1)(b). The injury employer would still seek reimbursement if they provided 80 percent or less of the employee's wage, but the non-injury employer's disability benefit would never be coordinated with that amount.

[18] See MCL 418.354(1)(b).

Furthermore, permitting a minority injury employer to coordinate instead of mandating coordination does not result in greater costs being passed on to the Second Injury Fund. Any minority injury employer in a dual-employment situation that might request reimbursement from the Second Injury Fund has these choices: (1) the employer could choose not to offer additional insurance benefits at all, (2) the employer could choose to offer additional benefits, and then coordinate those benefits so that it would have a lower wage-loss liability, or (3) the employer could choose to offer additional benefits and elect not to coordinate those benefits, paying the full wage-loss benefit in addition to the additional benefit. Notably, the minority injury employer's and the Second Injury Fund's liabilities are the same in the first and last scenarios, and both are lower in the second. The minority injury employer does not stand to gain financially from the Second Injury Fund under any option.

According to the majority, a minority injury employer loses the right to full reimbursement by providing an additional insurance benefit. If the majority is correct, the Legislature must have intended to discourage employers who are hiring part-time employees from providing incentives for those employees. Surely that narrow policy goal could have been accomplished without requiring the tenuous reading of the statutory language the majority proposes. But more fundamentally, there is no reason to suppose the Legislature sought to interfere with the prerogative of this subset of employers to enter into employment contracts and offer their employees whatever insurance benefits the employer and employee jointly elected. Respecting employment contracts seems especially important for employers trying to attract first responders in tough economic times. In the absence of any reason to worry that either the injury employer or the

10

employee would be taken advantage of in their free market transaction, or that both would collude to take advantage of the Second Injury Fund—and such worries seem hard to imagine here—we should presume, barring legislative indication to the contrary, that the Legislature did not seek to regulate employment contract terms.

## IV. CONCLUSION

In my view, the more natural reading of the statutory provisions at issue is one that holds that the decision to coordinate benefits rests solely with the injury employer and does not affect the reimbursement an injury employer may request from the Second Injury Fund in dual-employment cases. This understanding gives meaning to the statutory language limiting coordination to benefits paid by a single employer, avoids reading out the phrase "the employer's obligation" in MCL 418.354(1), avoids rendering the supposed mandate of the verb "shall" nugatory in a majority of employment situations, and would not punish or impede an employer seeking to recruit employees with employment terms that employers and employees deem desirable, especially for dangerous but important jobs like fighting fires.

Accordingly, I would affirm the decision of the Court of Appeals.

Bridget M. McCormack


VIVIANO, J., took no part in the decision of this case.

11